No. 25,093.

CLARK McOSKER, *Appellee,* v. THE FEDERAL INSURANCE COMPANY, *Appellant.*

No. 25,094.

C. H. ADAIR, *Appellee,* v. THE FEDERAL INSURANCE COMPANY, *Appellant.*

No. 25,095.

BERT WHELCHEL, *Appellee,* v. THE FEDERAL INSURANCE COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. INSURANCE—*Fraud of Insurance Agent—Premium Notes Transferred—Innocent Purchaser—Damages Recoverable.* Where applications for insurance were procured by fraudulent representations and negotiable notes for premiums had been executed and delivered which were transferred to an innocent holder before they were due, and the policies subsequently issued were not in accordance with the representations made, and for that reason were not accepted, and the notes were unsuccessfully contested in actions brought thereon by the transferee, the insurance company was liable in damages for the loss sustained through the fraud, including attorneys fees, costs and expenses of resisting the payment of the notes.

2. SAME—*Instruction—Defense to Notes Made in Good Faith.* An instruction to the effect that the fees, costs and expenses in resisting the actions on the notes could not be recovered unless the fraud was established and the parties wronged had made the defense against the notes in good faith, believing that they had a good defense against the transferee, was not erroneous.

3. SAME:—The evidence examined and held to be sufficient to sustain the finding of fraud and that the defense against the notes was made in good faith.

Appeal from Stafford district court; CLYDE R. DOUGLASS, judge. Opinion filed March 8, 1924. Affirmed.

*Ray H. Beals,* of St. John, and *W. T. Thompson,* of Lincoln, Neb., for the appellant.

*Paul R. Nagle, Robert Garvin,* and *Evart Garvin,* all of St. John, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: These actions were brought by the plaintiffs against the Federal Insurance Company to recover damages alleged to have been sustained by each of them through the mis-

representations and fraud of the agents of the insurance company. Each recovered a judgment against the defendant from which appeals have been taken.

The issues in the three cases and the evidence given in support of them are substantially the same and therefore they are considered together and will be disposed of in a single opinion.

The plaintiffs alleged and offered testimony to show that the agents of the defendant solicited them to contract for insurance representing that the policies when issued would contain provisions insuring the plaintiffs against death from any cause, another insuring the beneficiary, the wife of the insured, against sickness and accident, another to pay the insured a weekly indemnity in case of confinement to the house on account of sickness or accident or if he should be quarantined by reason of the illness of a member of his family, another that the company would pay an annual dividend on the amount of the premium for which a note was given, and still another that the company would pay the insured all doctor bills for himself and any member of his family, covering a period of six months, and in case of death from any cause, pay the beneficiary an amount from $2,500 to $5,000. It was claimed that a sample copy of the insurance policy to be issued was shown or read to the plaintiffs, but when the policy was delivered it did not contain material provisions of the sample copy or that were represented to be included in it. Believing the representations the plaintiffs say they were induced to sign an application for insurance and notes for the premiums were made, although one of the plaintiffs denied that he had actually signed a note. Afterwards, and before the notes matured, they were indorsed and transferred from the First State Bank of Stafford, which was subsequently held to be a holder in due course and without notice of the fraud of the defendant. Actions were brought upon the notes by the holder, which were resisted by the plaintiffs, but at the end of the suits it was determined that the plaintiffs were liable on the notes, and judgments against them were rendered thereon. As stated, when the policies were received they were found not to contain some of the provisions mentioned, and plaintiffs refused to accept them and asked for the return of the notes. The agents of the defendant first agreed to procure a surrender of the notes or reimburse the bank for the amounts of the same, but this was not done. It was further alleged and shown that plaintiffs had employed counsel to resist the collec-

tion of the notes so transferred and they asked for the recovery of counsel fees and the costs and expenses incurred in their resistance to the collection of the notes.

The defense alleged was a denial of the misrepresentations and allegations to the effect that the plaintiffs had signed the applications, had read or heard read the sample copy of the policy to be issued, and that the policies which were subsequently delivered were in accordance with the applications and the sample copy so read by the plaintiffs.

The first contention is that the verdict of the jury and the judgment of the court are not supported by sufficient evidence. There is testimony to the effect that the representations as to the character of insurance they were obtaining differed materially from that provided in the policy which was subsequently delivered to them. The averments of the plaintiffs as to the misrepresentations of the agents of the insurance company were well supported by the plaintiff's evidence and it also appears that the policies which the insurance company undertook to deliver fell far short of those agreed to be given. Plaintiff's testimony as to the misrepresentations was reënforced to some extent by the action of the company after plaintiffs had refused to accept the policies. It appears that the secretary of the company and its agent visited the plaintiffs, at which time they agreed for the company to place in the bank which had purchased the plaintiff's notes, the policies, the certificates of deposit which the bank had issued in payment of the notes, and that when the certificates were delivered the bank was to return the notes to plaintiffs. The certificates, however, were not returned in accordance with the agreement and neither were the notes returned to plaintiffs. The agents of the company appear to have largely confined their operations to persons engaged in farming, and five farmers other than plaintiffs testified that the same agents had misrepresented the kinds of insurance they were writing and as to what was included in the sample policy exhibited by the agents. Their testimony in this respect was substantially the same as that of plaintiffs. When plaintiffs asked the agents for copies of the sample policy the latter declined to leave them, giving as an excuse that the policies might fall into the hands of the agents of rival companies. Portions of the sample policies were read and explained by these agents, but it appears that what was read did not correspond with the provisions of the policies which the com-

pany undertook to deliver to plaintiffs. There was no lack of evidence as to the fraud of the defendant. It is true that a written statement signed by plaintiff Whelchel was introduced in evidence, and it was to the effect that no misrepresentations had been made by the agent Burns, that Whelchel was disappointed to find that the policy did not cover natural death, but that it was as much his fault as that of anyone else. His explanation of the writing was that when it was presented he objected to certain words found in it and the agent agreed to erase these words, but it was done with a lead pencil. He also said that the statement had been changed after it was signed. He further testified that the paper was signed too on the consideration that the parties would return his notes, and that this had never been done. Even if the writing had not been changed or if he was induced to give it in order to secure the return of his note, it was not conclusive evidence as to the fraud charged by Whelchel. He testified at the trial that the false representations were in fact made, and it devolved on the jury to determine what were the facts in that respect.

As to the attorney fees and expenses recovered, it is contended that manifestly there was no defense to the notes and that there could have been no good faith in contesting their validity. If the party through its fraud procured the giving of the notes, any necessary expense incurred in an honest effort to defeat the fraud or limit the extent of the damages may be recovered. In *Bank v. Williams*, 62 Kan. 431, 63 Pac. 744, it was held that—

"Attorneys' fees and expenses incurred in good faith by a bank in saving itself from loss occasioned by the fraud of a party who obtained from it a draft, and then caused the same to be cashed, may be recovered in an action against the wrong-doer." (Syl. ¶ 1.)

In that case it was held that ordinarily a party can recover beyond the amount of his actual damages only the costs allowed by statute, but that such fees and expenses may be recovered as actual damages from a wrongdoer who has been guilty of fraud, malice or oppression. In the decision the court quoted from 1 Sutherland on Damages, 2d ed., § 58, as follows:

"If one's property is taken, injured or put in jeopardy by another's neglect of duty imposed by contract, or by his wrongful act, any necessary expense incurred for its recovery, repair or protection is an element of the injury. It is often the legal duty of the injured party to incur such expense to prevent or limit the damages; and if it is judicious and made in good faith, it is recoverable, though abortive."

See, also, *Bourke v. Spaight,* 80 Kan. 387, 102 Pac. 253; *City of Topeka v. Brooks,* 99 Kan. 643, 164 Pac. 285; *Ireland v. Bank,* 103 Kan. 618, 176 Pac. 103. Was there good faith in the defenses made? A part of the fraud charged was the securing of the notes with the purpose of transferring them at once to an innocent holder. It was not unreasonable, and in fact, the defendant perpetrating the wrong must have contemplated that the plaintiffs, when they learned of the fraud, would use every reasonable effort to defeat the scheme and avoid loss to themselves. The notes had been transferred to a bank which, instead of paying cash for them, had issued certificates of deposit, which the insurance company still holds. The agents of the company were often in the bank, and when the ineffectual compromise was made these agents arranged that the bank should act as stakeholder. It may also be added that when the facts and circumstances of the fraud had been laid before a reputable attorney it was decided that a defense was warranted and it was their legal duty to resist the payment of the notes. Although the defense made was fruitless we cannot say that there was a lack of good faith in making it.

It is contended that error was committed in giving an instruction in which the court, after stating the issues and the rules for determining whether fraud had been committed, advised the jury that if they found for plaintiff on this issue, and further found that the defense to the notes had been made in good faith, certain attorneys fees, costs and expenses in making the defense might be allowed. As to good faith, they were further instructed that these fees and expenses could not be recovered unless the plaintiffs believed they had a good defense to the notes against the bank, but that the mere fact that the defense failed did not warrant a finding of bad faith. The instruction is deemed to be correct and is not open to the interpretation claimed to the effect that the court assumed that fraud had been shown or that a right to recovery of the fees and expenses had been established by the evidence. It appears that counsel for defense requested an instruction that good faith was an essential element of such a recovery. The instructions given fairly covered the cases, and finding no material error in the records the judgments are affirmed.