(823 P.2d 818)

No. 65,927

CLARK'S JEWELERS, *Plaintiff,* v. HOWARD D. HUMBLE and PATRICIA K. HUMBLE, *Defendants/Appellees,* v. CREDIT BUREAU OF GREATER GARDEN CITY, INC., *Third-Party Defendant/Appellant.*

Opinion filed December 31, 1991.

*Robert A. Levy,* of Garden City, for the appellant.

*John E. Fierro,* of Dodge City, for the appellees.

Before BRISCOE, C.J., LARSON, J., and DAVID W. KENNEDY, District Judge, assigned.

KENNEDY, J.: Credit Bureau of Greater Garden City, Inc., (Credit Bureau) appeals the district court's finding that it violated the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.* [1982]), as well as the court's award of damages and attorney fees to Howard and Patricia Humble.

The Humbles purchased jewelry from Clark's Jewelers in Dodge City and contracts were executed to finance their purchases. On August 24, 1987, Patricia received a telephone call from Virginia Green, an employee of Credit Bureau, informing Patricia that Clark's had assigned collection of the Humbles' account to Credit Bureau. On the same day, Credit Bureau mailed a letter to the Humbles seeking $12,263.45 on behalf of Clark's. The letter indicated the Humbles had 30 days to dispute the alleged debt, and that failure to pay could seriously compromise the Humbles' ability to receive credit in the future.

Upon receiving the letter, the Humbles retained John Fierro, who on August 29, 1987, advised the Credit Bureau:

"Please be advised that I represent Mr. and Mrs. Humble. Under no circumstances are you to communicate with them any further concerning this account. . . .

"1. My clients have never received statements or notices from either the Clarks or the attorney that they fired.

"2. My clients share an excellent reputation in this community and if either you or [Clark's] take any steps to blemish that record you can be sure that all of you will be involved in a lawsuit.

"3. We suggest that you investigate the reputation and activity of the creditor in this case in Dodge City to determine if these are the kind of people you wish to represent.

"4. The format of your letter of August 24, 1987 violates the Fair Debt Collection Practices Act."

After receiving the letter, Green discussed the status of the Humbles' account with Roland Belcher, president of Credit Bureau. Pursuant to its internal filing procedure, Green marked the Humble account as "disputed." In addition, she noted the following in the account ledger: "Received a letter from [the Humbles'] attorney, John Fierro. We are to communicate only with him. Change the address."

On September 1, 1987, Fierro wrote Credit Bureau, stating the Humbles had reached an agreement with Clark's to pay a minimum of $30 per month. The letter stated that no further payments would be made until Credit Bureau indicated who was authorized to receive payment. In addition, the letter indicated the possibility of a lawsuit against Clark's for misrepresenting the value of the jewelry.

On September 8, 1987, Credit Bureau wrote to the Humbles in care of Fierro, stating: "[Y]ou have avoided paying this debt in spite of repeated demands for payment and without explanation." Fierro returned this letter to the Credit Bureau with a handwritten note referring to his September 1 letter. Credit Bureau sent additional letters on September 29 and October 21, 1987. In its October 21 letter, Credit Bureau asserted: "This office has received no response to previous contacts with you regarding the above captioned matter." Fierro responded to Credit Bureau's letters on September 30 and October 27, 1987, and forwarded copies of all letters to the Humbles. All letters sent to Fierro by Credit Bureau were computer-generated form letters. None of the letters acknowledged Fierro or any of his requests or demands.

Clark's filed suit against the Humbles. The Humbles filed a petition bringing Credit Bureau into the lawsuit as a third-party defendant, alleging violations of the Fair Debt Collection Practices Act. The Humbles settled out of court with Clark's. The district court found that Credit Bureau did not respond directly to Fierro's letters but sent form letters designed for the Humbles rather than their attorney and that the letters violated 15 U.S.C. § 1692c(a)(2) (1982). The court did not award damages for the violations because of Fierro's ability to censor the letters. The court concluded Credit Bureau's September 8 letter violated 15 U.S.C. § 1692g(b) (1982). Pursuant to 15 U.S.C. § 1692k(a)(2)(A) (1982), the court ordered Credit Bureau to pay civil damages of $500 and the Humbles' attorney fees.

At the request of the district court, Fierro submitted an itemized statement of his charges, requesting $100 per hour for 48 hours. Credit Bureau opposed the statement and, after a hearing, the court ordered payment of Fierro's fees at a rate of $100 per hour for 40 hours.

This court's scope of review is to determine whether the trial court's findings are supported by substantial competent evidence and whether the findings are sufficient to support the court's conclusions of law.

"Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.] Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988).

Credit Bureau's first issue is that the district court erred in finding violation of §§ 1692c(a)(2) and 1692g(b) of the Act. It argues that letters addressed to the Humbles but mailed in care of Fierro cannot constitute direct communications with debtors in violation of § 1692c(a)(2). Credit Bureau also argues the letters received from Fierro did not dispute the debt and, therefore, § 1692g(b) is not applicable.

15 U.S.C. § 1692c provides:

"(a) **Communication with the consumer generally.**

"Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

. . . .

"(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

Fierro wrote four letters to Credit Bureau and a handwritten note, yet Credit Bureau did not respond directly to any of Fierro's correspondence. After receiving Fierro's August 29 letter, Credit Bureau directed all subsequent letters concerning the Humbles' debt to Fierro's office. The letters were addressed to the Humbles in care of Fierro. Despite Fierro's demand that Credit Bureau refrain from communicating with the Humbles, Credit Bureau directed its letters to the Humbles and did not acknowledge Fierro's representation. In its October 21 letter to the Humbles at Fierro's address, Credit Bureau asserted: "This office has re-

ceived no response to previous contacts with you regarding [your indebtedness to Clark's]."

Credit Bureau also asserts that any error on its part is a mere technical violation of the Act and not the type of conduct the statute is designed to prevent. This assertion is without merit. "[I]t seems c(a)(2) was designed to prevent repeated phone calls and letters directly to the debtor after the debt collector knows that person to be represented by an attorney." *Bieber v. Associated Collection Services, Inc.*, 631 F. Supp. 1410, 1417 (D. Kan. 1986). In this instance, Credit Bureau repeatedly mailed letters to the Humbles after learning they were represented by Fierro. Although the letters arrived at Fierro's office, there is substantial evidence to support the district court's conclusion that Credit Bureau directly communicated with the debtors, in violation of § 1692c(a)(2) of the Act.

15 U.S.C. § 1692g(b) provides:

"If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."

Credit Bureau argues it did not violate this section because the letters Fierro wrote on behalf of the Humbles did not dispute the debt. Examination of the letters indicates that Fierro did not actually use the word "dispute" in his communications. In his August 29 letter, Fierro mentioned a possible claim against Clark's for misrepresentation. He also claimed the Humbles received no statements or notices in relation to the alleged debt. At trial, Green testified she did not interpret Fierro's letter as disputing the debt.

The Act does not define the meaning of the word "dispute" as it is used in the statute. Black's Law Dictionary 472 (6th ed. 1990) defines the term "dispute" as "conflict or controversy; a conflict of claims or rights; an assertion of a right, claim, or demand on one side, met by contrary claims or allegations on the other." Fierro's letter of August 29 indicated intent to file a

counterclaim on behalf of the Humbles against Clark's. Although the term "dispute" was not used, the context of Fierro's letter clearly shows that the debt sought to be collected was contested. Credit Bureau should have refrained from further contact with the Humbles upon receiving this notice of dispute. There is substantial evidence to support the district court's conclusion that Credit Bureau violated § 1692g(b) of the Act.

The district court awarded the Humbles damages of $500 pursuant to § 1692k(a)(2)(A) of the Act, based upon Credit Bureau's violations of the Act in dealing with the Humbles as well as Credit Bureau's problems with previous lawsuits. Credit Bureau argues the court abused its discretion in ordering that Credit Bureau pay damages to the Humbles. "The standard of review for abuse of judicial discretion is whether the judge's ruling was arbitrary, fanciful, or unreasonable. Judicial discretion is abused when no reasonable person would take the view adopted by the trial court." *Smith v. Deppish*, 248 Kan. 217, Syl. ¶ 2, 807 P.2d 144 (1991).

15 U.S.C. § 1962k(a)(2)(A) permits a court, in its discretion, to award compensation for damages in addition to actual damages in the case of an action by an individual debtor. A court awarding additional damages in any individual action must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." § 1962k(b)(1). Such awards are subject to § 1692k(c), which provides:

"A debt collector may not be held liable in any action bought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

The district court considered detailed evidence of Credit Bureau's prior disputes with debtors in addition to evidence of its intentions in dealing with the Humbles. Belcher testified that Credit Bureau had been in operation for 65 years and he had been involved with the agency for 25 years. Green testified that she began doing collection work in 1980. Both Belcher and Green indicated that Green received extensive training prior to handling accounts on behalf of Credit Bureau. In regard to the Humbles'

account, Green's notes indicate her understanding that she was to communicate only with Fierro. Yet, instead of responding to the specific concerns expressed in Fierro's correspondence, Credit Bureau replied with computer-generated form letters directed to the Humbles in care of Fierro. Green made a conscious choice to send the form letters after hearing from Fierro and reviewing the Humbles' account with her supervisor. Belcher admitted to Credit Bureau's involvement in two prior lawsuits brought by debtors. He indicated, however, that both lawsuits resulted from the accidental mixing of names and addresses on accounts.

The district court concluded that Credit Bureau failed to show by a preponderance of evidence that its violations of the Act resulted from bona fide error. The court did not abuse its discretion in assessing a $500 civil penalty against Credit Bureau.

Finally, Credit Bureau argues the district court erred in awarding the Humbles $4,000 in attorney fees, based on 40 hours at a rate of $100 per hour.

"Generally, the award of attorney fees is a matter within the trial court's discretion and is upheld unless there is a showing of an abuse of discretion. [Citation omitted.] . . . . As a general rule, appellate courts defer to any thoughtful rationale and decision developed by a trial court and avoid second guessing. [Citation omitted.]" *Hatfield v. Wal-Mart Stores, Inc.*, 14 Kan. App. 2d 193, 198-99, 786 P.2d 618 (1990).

"In Kansas, attorney fees are not allowed unless authorized by statute or by agreement of the parties." *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, Syl. ¶ 3, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988). The Act allows successful litigants to recover "a reasonable attorney's fee as determined by the court" from debt collectors. 15 U.S.C. § 1692k(a)(3).

Credit Bureau asserts the record in this case does not justify the Humbles' attorney charging $100 an hour for his services. Examination of the record reveals conflicting evidence concerning Fierro's hourly rate in this case. Patricia Humble testified that Fierro charged them $90 per hour for his services. At a hearing on the issue of attorney fees, Fierro testified that he informed the Humbles he would charge them at an hourly rate of $100 per hour in this action. Fierro used the same hourly rate in the itemized statement he submitted to the district court. He indi-

cated his standard hourly rate could vary from $95 to $120 per hour, depending upon the type of client and the complexity of the case.

After considering the aforementioned conflicting evidence, the district court assessed attorney fees of $100 per hour against Credit Bureau. "[C]onflicts in the evidence are left to the fact-finder, here the district court." *Carter v. Koch Engineering*, 12 Kan. App. 2d 74, 86, 735 P.2d 247, *rev. denied* 241 Kan. 838 (1987). Based upon the evidence in the record, the district court did not abuse its discretion in awarding fees at the rate of $100 per hour.

Credit Bureau also contends the court abused its discretion in assessing attorney fees based upon 40 hours of work. Again, there is conflicting evidence. Credit Bureau argues that, given Fierro's expertise in creditor rights, his charge for 5.5 hours of research is excessive. However, Fierro testified that he had little experience in the area of debtor harassment prior to representing the Humbles. Credit Bureau also argues that Fierro's charge for 7.5 hours of trial preparation is excessive. It points out that Fierro admitted he did not document the time he spent working on the Humbles' claim.

The district court's memorandum opinion on the issue of attorney fees indicates it considered all of the evidence and Credit Bureau's contentions in a thoughtful manner. Fierro requested compensation for 48 hours of work but the court allowed compensation for 40 hours based in part on Fierro's failure to document his hours, as well as the court's belief that the amount of time spent in preparing briefs, findings of fact, and pleadings may have been excessive. In light of the record, the district court did not abuse its discretion in awarding fees for 40 hours of work.

Affirmed.