(894 P.2d 260)
No. 71,600

GOLCONDA SCREW, INC., *Appellee*, v. WEST BOTTOMS LTD., ALVIN H. O'CONNELL, and MARY A. O'CONNELL, *Appellants*.

Opinion filed April 28, 1995.

*Charles J. Hyland* and *James P. O'Hara*, of Shughart Thomson & Kilroy, P.C., of Overland Park, for the appellee.

*Dean D. Garland*, of Shawnee, for the appellants.

Before PIERRON, P.J., BRAZIL, J., and RON ROGG, District Judge, assigned.

ROGG, J.: West Bottoms Ltd., (West Bottoms), Alvin H. O'Connell, and Mary A. O'Connell appeal from the district court's judgment awarding punitive damages and attorney fees. They also appeal from the district court's disregard of the corporate form by imposing joint and several liability on West Bottoms and the O'Connells individually.

Subsequent to the date for argument on this matter, which both parties waived, we received notice from the appellee that appellant West Bottoms had filed a Chapter 7 petition in the United States Bankruptcy Court. We stayed further formal action on this appeal after receipt of the notice.

On December 29, 1994, we received a motion from appellants asking that our stay be lifted. On February 9, 1995, we received a motion from the appellee requesting that the stay be lifted as well. The automatic stay imposed by 11 U.S.C. § 362(a)(1) (1988) applies only to actions or proceedings commenced *against* the debtor. This appeal was commenced *by* the debtor, not *against* the debtor, and the automatic stay does not apply. We consulted on March 8, 1995, with Carl Clark, the trustee in bankruptcy, who has no objection to our proceeding to resolve the appeal as requested by the debtor and possible creditor. We therefore proceed to rule on this appeal.

The notice of appeal identifies three issues ruled upon in the memorandum decision and journal entry of judgment entered on March 7, 1994. These are the three issues this court will consider. Earlier judgments of the district court are not before us for consideration other than for the purpose of accepting the district court's factual findings. See *Hess v. St. Francis Regional Med. Center*, 254 Kan. 715, 869 P.2d 598 (1994).

Alvin has been the president and treasurer of West Bottoms since its incorporation in 1986. Mary, Alvin's wife, is a director, vice-president, and secretary. The O'Connells are the only directors, shareholders, and officers of West Bottoms.

In the summer of 1991, West Bottoms entered into a commercial real estate contract with Golconda Screw, Inc., (Golconda) in which Golconda agreed to purchase a warehouse owned by West Bottoms. Alvin signed the contract on behalf of West Bottoms. The sale was to close on November 1, 1991.

The contract did not close because certain repairs were not performed as required by the contract. Litigation conducted in Johnson County concluded in a judgment in favor of Golconda for breach of contract and attorney fees.

As of November 1, 1991, the O'Connells were personally indebted to Robert Pettit in excess of $138,000 and to Bill Renzenberger for $20,000. These debts were personal debts secured by real property owned by the O'Connells as individuals. The district court specifically found the debts to be personal debts of the O'Connells and not corporate debts of West Bottoms.

On November 4, 1991, West Bottoms held a special directors' and stockholders' meeting and resolved to transfer the warehouse to J.P. Enterprise, "a corporation to be formed and owned by Stockholders, all of which are promissory noteholders of West Bottoms, LTD." Alvin was the only noteholder of West Bottoms. The incorporation fee was paid by West Bottoms.

The articles of incorporation for J.P. Enterprise designated Mathilde Pearson, an elderly neighbor of the O'Connells, as registered agent. The articles also indicated Pettit and Pearson were the stockholders and directors, and that they had waived notices of meetings as evidence by their signatures. The minutes expressing these facts were not signed by Pettit or Pearson. Pettit was in Saudi Arabia and did not know of the formation of the corporation or his status as an officer. Pearson was not present at the meetings either.

Alvin is also the secretary and treasurer of J.P. Enterprise, formed November 7, 1991. Incorporation documents list the office of J.P. Enterprise at Pearson's residence. Renzenberger is the president and Pettit is the vice-president.

The warehouse that Golconda contracted to purchase was West Bottoms' only asset, other than a cash account with a balance of approximately $300. West Bottoms' 1991 tax return listed assets of $224.07.

Golconda brought this action in Wyandotte County seeking to set aside the transfer of the warehouse to J.P. Enterprise as a fraudulent conveyance pursuant to K.S.A. 33-102. Golconda requested punitive damages and attorney fees. Golconda also requested the district court to disregard the corporate form of West Bottoms and impose liability on the O'Connells individually.

The district court found:

"It was clear to O'Connell on the day of scheduled closing that he was to be sued or voluntarily pay damages . . . .

"Since the attempted contract to sell the building was by the O'Connells in the corporate capacity, any damages arising to the plaintiffs would have to be satisfied out of corporate assets (the building.) So he did what he did to defeat their claim."

The district court set aside the conveyance of the warehouse to J.P. Enterprise and awarded Golconda punitive damages in the

amount of $10,000 and attorney fees of $10,000. It also imposed joint and several liability on West Bottoms and on the O'Connells individually.

*Was the award of punitive damages in this case authorized under Kansas law?*

West Bottoms argues punitive damages cannot be awarded as a matter of law. An appellate court's review of conclusions of law is unlimited. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

Golconda brought this action pursuant to K.S.A. 33-102, which provides:

"Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect."

The district court set aside the conveyance, and West Bottoms does not appeal that judgment.

West Bottoms asserts that a general trend in other states disallows the award of punitive damages in a fraudulent conveyance case.

"Although there is authority to the contrary, it has been held improper to award a money judgment against the judgment debtor where the creditor already has a judgment against him for the debt. *Exemplary damages* may not be granted as incidental relief in an action to set aside a fraudulent conveyance." 37 C.J.S., Fraudulent Conveyances § 444, p. 1298 (1994 Supp.).

The authority cited for the above C.J.S. quotation is *Miller v. Kaiser*, 164 Colo. 206, 433 P.2d 722 (1967). This statement of law is hinged on a more general proposition, which apparently still holds true in Colorado, that the "award of exemplary or punitive damages in equity actions or as *incidental to the equitable relief*, is generally held to be improper." [Emphasis added.] 164 Colo. at 215 (citing Annot., 48 A.L.R.2d 947).

The Colorado Supreme Court went on to say:

"The equitable remedy of setting aside a fraudulent conveyance on a complaint of a judgment creditor in our view is not compatible with an award of exemplary

damages. Inherent in this remedy is the restoration of the ownership status in a fraudulent transferor thereby allowing a judgment creditor to reach the asset, and aid him in the collection of this judgment debt. Where the single remedy of voiding a fraudulent conveyance is sought and secured by the judgment creditor, an additional award of exemplary damages, even where the evidence goes to the extent of showing that the fraudulent transferor and transferee acted with malice, intent, and design in an effort to hinder or prevent the collection of a judgment, is inherently not includable as a part of the remedy or as incidental thereto. It is our conclusion that the trial court in an equitable action involving an alleged fraudulent conveyance, does not have the inherent power to award exemplary damages." 164 Colo. at 215-16.

West Bottoms also cites *Gilmore v. Tucker*, 83 Cal. App. 3d 664, 148 Cal. Rptr. 86 (1978). This citation is improper as the opinion was withdrawn by order of the California Supreme Court. See 83 Cal. App. 3d 672 (1978).

Kansas has not decided the specific issue of whether punitive damages may be awarded in an action to set aside a fraudulent conveyance. Despite numerous cases indicating punitive damages are not available absent an award of actual damages (see, *e.g.*, *Enlow v. Sears, Roebuck & Co.*, 249 Kan. 732, Syl. ¶ 7, 822 P.2d 617 [1991]; *McConwell v. FMG of Kansas City Inc.*, 18 Kan. App. 2d 839, Syl. ¶ 8, 861 P.2d 830 [1993], *rev. denied* 254 Kan. 1007 [1994]), punitive or exemplary damages may be awarded incidental to equitable relief. *Capitol Fed'l Savings & Loan Ass'n v. Hohman*, 9 Kan. App. 2d 217, 675 P.2d 384, *aff'd* 235 Kan. 815, 682 P.2d 1309 (1984).

Golconda cites numerous cases from other jurisdictions that hold punitive damages are available where there has been a fraudulent conveyance. *Nunez v. Interstate Corporate Systems*, 165 Ariz. 410, 799 P.2d 30 (1990); *Lawson v. Athens Auto Supply & Electric, Inc.*, 200 Ga. App. 609, 409 S.E.2d 60, *cert. denied* 200 Ga. App. 896 (1991); *Southeast Bank v. I.P. Sarullo Ent.*, 555 So. 2d 704, (Miss. 1989); *Lewis v. Barnett*, 694 S.W.2d 743 (Mo. App. 1985); and *Blakeslee v. Rabinor*, 182 App. Div. 2d 390, 582 N.Y.S.2d 132 (1992).

Kansas law does not require an award of actual damages before punitive damages may be awarded. *Hohman*, 9 Kan. App. 2d at 217. The law does require a cause of action independent of a

claim for punitive damages. See *Moore v. State Bank of Burden*, 240 Kan. 382, 390, 729 P.2d 1205 (1986). "Punitive damages are more in the nature of an equitable action, that is, a punitive action for the purposes of punishing the wrongdoer and deterring any such future conduct." *Smith v. Printup*, 254 Kan. 315, Syl. ¶ 7, 866 P.2d 985 (1993). "No separate right of action existed at common law for punitive damages." 254 Kan. at 325.

West Bottoms argues that Golconda's remedy under 33-102 does not support punitive damages as a remedy. "In cases where the matter is governed by statute the law is followed and equity cannot be invoked." *Norris v. Nitsch*, 183 Kan. 86, 96-97, 325 P.2d 326 (1958). In *Norris*, the Kansas Supreme Court held that a statutory mechanic's lien held priority over a subsequent interest in certain property. The equitable remedy at issue was a request for specific performance of a subsequent contract reducing the sales price of the subject property. 183 Kan. at 96.

West Bottoms argues that permitting punitive damages in an action pursuant to 33-102 enlarges the scope of the statute by granting damages not made available by the clear language of the statute. Golconda notes that an award of punitive damages pursuant to 42 U.S.C. § 1981 (1982) was approved in *Smith v. United Technologies*, 240 Kan. 562, 571-72, 731 P.2d 871 (1987).

West Bottoms' argument that an award of punitive damages enlarges the scope of the remedy provided by 33-102 overlooks an important feature of punitive damages. Punitive damages are not compensatory and are not a remedy at common law. *Smith v. Printup*, 254 Kan. 325. In fact, punitive damages cannot be requested in any initial petition. K.S.A. 60-3703.

"In Kansas, punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." *Folks v. Kansas Power & Light Co*, 243 Kan. 57, Syl. ¶ 6, 755 P.2d 1319 (1988). To recover punitive damages, a party must prove by clear and convincing evidence that the opposing party acted toward it with willful or wanton conduct, fraud, or malice. K.S.A.

60-3701(c); *Grove v. Orkin Exterminating Co., Inc.*, 18 Kan. App. 2d 369, 372, 855 P.2d 968 (1992).

The district court found that Alvin was attempting to defraud Golconda while protecting himself from personal creditors. It further found that the O'Connells attempted to form a new corporation to keep Golconda from attaching the warehouse to satisfy the Johnson County judgment.

Punitive damages may be awarded to punish a wrongdoer for the willful invasion of another's rights and to deter others from committing such conduct. To prevail in an action to set aside a fraudulent conveyance pursuant to 33-102, a plaintiff must prove the conveyance was made with the intent (1) to hinder, delay, or defraud creditors or (2) to defraud or deceive the grantee.

By definition, the plaintiff must prove a willful interference with the rights of the plaintiff by the defendant. Further, punitive damages may be awarded incident to equitable relief without an award of actual damages.

The district court did not err in awarding punitive damages in this case. Such damages may be awarded when appropriate to punish the willful transfer of a judgment debtor's only asset to avoid execution and to deter others from doing so.

*Was the award of attorney fees in this case authorized under Kansas law?*

Again, this court is reviewing a conclusion of law. Our standard of review is unlimited. *Gillespie*, 250 Kan. at 129.

West Bottoms contends the award of attorney fees is not supported by contract or statute. See *Iola State Bank v. Biggs*, 233 Kan. 450, 459, 662 P.2d 563 (1983). " 'In Kansas, attorney fees are not allowed unless authorized by statute or by agreement of the parties.' " *Clark's Jewelers v. Humble*, 16 Kan. App. 2d 366, 372, 823 P.2d 818 (1991) (quoting *Dickinson, Inc. v. Balcore Income Properties Ltd.*, 12 Kan. App. 2d 395, Syl. ¶ 3, 745 P.2d 1120 [1987], *rev. denied* 242 Kan. 902 [1988]).

Golconda asserts that attorney fees may be awarded by the district court under its equitable jurisdiction. Golconda cites *Barten v. Turkey Creek Watershed Joint District No. 32*, 200 Kan.

489, 510, 438 P.2d 732 (1968), in support of this proposition. *Barten* held that attorney fees were recoverable damages in a mandamus action pursuant to K.S.A. 60-802(c). 200 Kan. at 510. *Barten* does not stand for the proposition that a court can exercise equitable jurisdiction to impose attorney fees.

Golconda also contends that attorney fees may be awarded as compensation for the expenditures suffered or incurred because of the defendant's fraudulent acts. Golconda cites *McOsker v. Federal Insurance Co.*, 115 Kan. 626, 629-30, 224 Pac. 53 (1924), for support.

*McOsker* does not apply to the facts in the case at bar. In *McOsker*, the plaintiff was awarded attorney fees incurred in a separate action which, in turn, was caused by the fraud of the defendant. The district court awarded Golconda the reasonable attorney fees incurred in prosecuting the current action, not as actual damages incurred in the defense of another action instituted against Golconda as a result of West Bottoms' fraudulent conduct.

The district court awarded attorney fees based upon West Bottoms' "intentional deprivation" of Golconda's rights and as "the necessary extension of the original real estate contract which specifically provided for attorney's fees."

Golconda does not rely upon a specific statute authorizing the award of attorney fees.

K.S.A. 60-2001(d) provides:

"Other fees and expenses to be assessed as additional court costs shall be approved by the court, unless specifically fixed by statute. Other fees shall include, but not be limited to, witness fees, appraisers' fees, . . . court costs from other courts and any other fees and expenses required by statute. All additional court costs shall be taxed and billed against the parties as directed by the court."

K.S.A. 60-2002(a) provides that costs shall be taxed as a matter of course:

"Unless otherwise provided by statute, or by order of the judge, the costs shall be allowed to the party in whose favor judgment is rendered. The court shall have the discretion to order that the alternative dispute resolution fees be, in whole or in part, paid by or from any combination of any party or parties, from any fund authorized to pay such fees, or form the proceeds of any settlement or judgment."

The Kansas Supreme Court has stated: "K.S.A. 60-2002 . . . indicate[s] the intent of the legislature to award attorney fees as costs in the action." *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 377, 789 P.2d 211 (1990).

K.S.A. 60-2001 and 60-2002 are not specific statutes authorizing an award of attorney fees. Rather, 60-2001 and 60-2002, as indicated in *Snodgrass*, indicate that the award of attorney fees, when otherwise authorized, are to be awarded as costs separate from the merits of the action.

The remaining question is whether the original real estate contract providing for attorney fees authorized an award of such fees in this case. An appellate court's review, when construing a written contract on uncontested facts, is de novo. *Metropolitan Life Ins. Co. v. Strnad*, 255 Kan. 657, 660, 876 P.2d 1362 (1994).

Paragraph 16 of the real estate contract provides:

"If, as a result of a default under this Contract, either Seller or Buyer employs an attorney to enforce its rights, the defaulting party shall, unless prohibited by law, reimburse the nondefaulting party for all reasonable attorney's fees, court costs and other legal expenses incurred by the nondefaulting party *in connection with the default.*" (Emphasis added.)

"Damages recoverable for breach of contract are limited to those which may fairly be considered as arising, in the usual course of things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." *Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, Syl. ¶ 1, 563 P.2d 414 (1977). "One who breaches a contract is liable for damages *caused by the breach*; he is not liable for damages flowing from other causes whether or not those other causes have connotations of culpability associated with the term 'fault.' " *Broce-O'Dell Concrete Products, Inc. v. Mel Jarvis Constr. Co.*, 6 Kan. App. 2d 757, 760, 634 P.2d 1142 (1981).

Are Golconda's attorney fees in this action: (1) damages "arising in the usual course of things" or contemplated by the parties as the probable result of a breach as stated in *Kansas State Bank*; or (2) damages which arise from other causes as contemplated in *Broce-O'Dell?*

It cannot fairly be said that the instant action to set aside the fraudulent conveyance are "damages caused by the breach" of West Bottoms. Those damages were litigated and determined in the earlier Johnson County case. Though the attorney fees incurred in the instant action are sought to satisfy the Johnson County judgment, they were not caused by the breach. The fees for the instant action were "caused," so to speak, by West Bottoms' fraudulent conveyance seeking to avoid the judgment, not by the earlier breach of contract.

Attorney fees are not specifically authorized by statute in this case, nor are they supported by contract. The district court, therefore, erred in awarding Golconda attorney fees.

*Was there sufficient evidence to support "piercing the corporate veil?"*

West Bottoms argues there is insufficient evidence to support the district court's disregard of the corporate entity. "Each case involving disregard of the corporate entity must rest upon it special facts." *Kvassay v. Murray,* 15 Kan. App. 2d 426, 436, 808 P.2d 896, *rev. denied* 248 Kan. 996 (1991). When the district court makes findings of fact, appellate courts review the record to determine whether the findings are supported by substantial competent evidence. 15 Kan. App. 2d at 436.

*Kvassay v. Murray* sets forth the standards for disregarding the corporate form, or "piercing the corporate veil":

" 'We start with the basic premise that a corporation and its stockholders are presumed separate and distinct, whether the corporation has many stockholders or only one. Debts of a corporation are not the individual indebtedness of its stockholders. However, in an appropriate case the corporate form will be disregarded and the corporation and its stockholders may be treated as identical. [Citations omitted.] Power to pierce the corporate veil is to be exercised reluctantly and cautiously. [Citations omitted.]' *Amoco Chemicals Corporation v. Bach,* 222 Kan. 589, 593, 567 P.2d 1337 (1977).

" 'The doctrine of alter ego is used to impose liability on the individual who uses a corporation merely as an instrumentality to conduct his own personal business. Such liability arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation. Under it the court merely disregards the corporate entity and holds the individual responsible for his acts knowingly and intentionally done in the name of the corporation. [Ci-

tation omitted.]' *Sampson [v. Hunt]*, 233 Kan. [572, 579, 665 P.2d 743 (1983)]." 15 Kan. App. 2d at 436.

"In determining whether disregarding the corporate entity is appropriate, eight factors are considered: (1) undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant stockholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) use of the corporate entity in promoting injustice or fraud." 15 Kan. App. 2d 426, Syl. ¶ 7.

"While the power to pierce the corporate veil is to be exercised reluctantly and cautiously, the corporate entity can be disregarded if it is used to cover fraud or to work injustice, or if necessary to achieve equity." 15 Kan. App. 2d 426, Syl. ¶ 8.

"A review of Kansas cases . . . clearly shows it is appropriate to pierce the veil to prevent injustice or to achieve equity and it does not matter what kind of action is involved." 15 Kan. App. 2d at 440. "Injustice alone will support a disregard of the corporate entity. See *Kilpatrick Bros., Inc. v. Poynter*, 205 Kan. 787, 797, 473 P.2d 33 (1970)." 15 Kan. App. 2d at 439.

The findings of fact made by the district court, considered in light of the eight factors, provide an adequate basis for the disregard of West Bottoms' corporate entity.

(1) Undercapitalization of a one-man corporation.

West Bottoms' only substantial asset was the warehouse. The contract price for the warehouse indicates that its sale would satisfy the judgment obtained by Golconda in the earlier Johnson County case as well as the punitive damages (and attorney fees) award in the instant action.

(2) Failure to observe corporate formalities.

The record indicates that West Bottoms held annual stockholders/directors meetings and kept minutes of those meetings.

(3) Nonpayment of dividends.

West Bottoms had no profits and paid no dividends.

(4) Siphoning of corporate funds by the dominant stockholder.

West Bottoms paid $1,155 per month as interest on the debt to Pettit owed by the O'Connells personally. Further, the con-

veyance of the warehouse to J. P. Enterprise was an attempt to satisfy personal creditors.

(5) Nonfunctioning of other officers or directors.

There is no evidence that the O'Connells were nonfunctioning as officers and directors.

(6) Absence of corporate records.

The record shows that corporate records were kept by Alvin.

(7) Use of the corporation as a facade for operations of the dominant stockholder or stockholders.

The conveyance of the warehouse to J. P. Enterprise was an attempt by the O'Connells to satisfy personal debts via the use of corporate assets.

(8) Use of the corporate entity in promoting injustice or fraud.

The district court specifically found that the conveyance of the warehouse was to satisfy personal debts and to defeat any claim Golconda would have against West Bottoms.

West Bottoms contends that neither justice nor equity requires disregard of the corporate entity in this case. This assertion is in spite of the fact that the warehouse was transferred to satisfy personal debts and avoid any potential attachment by Golconda.

The district court did not err in its disregard of the corporate entity of West Bottoms and imposing joint and several liability on all the defendants.

We affirm the award of punitive damages and the disregard of the corporate entity. We reverse the award of attorney fees.

Affirmed in part and reversed in part.