(935 P.2d 233)

No. 75,660

FARMERS STATE BANK, SIMPSON, KANSAS, *Appellee*, v.
FFP OPERATING PARTNERS, L.P., *Appellant*.

Opinion filed March 28, 1997.

*Charley L. Laman*, of Laman Law Office, of Clyde, for the appellant.

*Don W. Noah* and *Mark J. Noah*, of Noah & Harrison, P.A., of Beloit, for the appellee.

Before LEWIS, P.J., KNUDSON, J., and CHIPMAN, S.J.

LEWIS, J.: FFP Operating Partners, L.P., (FFP) appeals from a judgment in favor of the Farmers State Bank of Simpson (Bank). The matter was tried to the court, which found that FFP had converted the security interest of the Bank in the inventory of a convenience store. The trial court awarded the Bank actual damages of $1,682.88, along with punitive damages in the amount of $12,000. FFP appeals.

The problems that lead to this lawsuit involve a convenience store in Beloit. FFP owned the building and the fixtures of the store and leased it to Mary Collins. The Bank loaned Collins $11,600 for start-up and operation costs. The Bank secured its loan by obtaining a security interest in the inventory and supplies of the business. The security interest of the Bank was properly perfected in the manner required by law.

One day, apparently Collins walked away from the business. She advised FFP and the Bank that she was leaving.

As pointed out earlier, FFP owned the store building and had sold gasoline to Collins for resale. In the process, it ended up holding some insufficient fund checks issued to pay for gasoline and other items. When FFP found out that Collins had left the store, it dispatched one of its employees to Beloit to lock the gasoline pumps and to secure and winterize the store. At no time did FFP make an effort to determine if the inventory in the store was subject to a lien.

The FFP employee went to Beloit, took physical possession of the store, and changed the lock. FFP then sold all the inventory of the store to another of its tenants. This individual purchased that portion of the inventory he wanted for an agreed 45% of the retail price of the items, which totaled $1,282.88. The remaining items of inventory were apparently perishable and were thrown away. The value of those items thrown away is estimated at $400.

The Bank did not sit idly by and allow FFP to trash its inventory. It made an effort to protect its interest in the inventory but was simply told to go away. The Bank president went to the store, where he encountered the employee of FFP. The banker told the employee who he was and that the Bank had a lien on the inventory. The banker allegedly showed FFP's employee the loan file, although the employee denied this. FFP complains the banker did not "seem like a banker." He apparently was not dressed in a fine suit and tie and was driving an old automobile. Be that as it may, the banker was told to call the superior of the FFP employee. The banker did so and advised the FFP executive that the Bank had a security interest in the inventory and that it did not want that inventory moved. The executive told the banker that FFP had absolutely no intention of honoring the Bank's security interest and ordered him to get off the property. In this manner, FFP ignored a first secured lien on the inventory, prevented the Bank from protecting its interest in the inventory, and sold and disposed of the Bank's inventory without its advice or consent.

As might be expected, the Bank did not ignore the situation. It made a written demand on FFP in which it demanded return of its inventory and an accounting. It got neither.

Not too surprisingly, the Bank then sued FFP for converting its inventory, which it valued at $6,749. Ultimately, the trial court did hold that FFP had converted the inventory but held that the Bank had incurred actual damages of only $1,682.88.

The trial court then turned to the question of punitive damages and conducted a hearing on those damages. At the conclusion of the hearing, it awarded the Bank $9,000 in punitive damages. The Bank then filed a motion to alter and amend the punitive damage award on the grounds the award did not cover attorney fees already expended and that it would not cover the costs of the appeal FFP had announced it was going to take. The trial court granted the motion and increased the punitive damage award to $12,000.

This appeal followed.

## CONVERSION

FFP first argues it cannot be held liable for converting a security interest in inventory. It suggests, without authority, that only tangible personal property is subject to conversion and that it is impossible to convert a security interest in inventory. We disagree.

"Conversion is the *unauthorized* assumption of right of ownership over personal property belonging to another." *Farrell v. General Motors Corp.*, 249 Kan. 231, 245, 815 P.2d 538 (1991). The Uniform Commercial Code (UCC) as adopted in Kansas defines a security interest as "an *interest in personal property* or fixtures which secures payment or performance of an obligation." (Emphasis added.) K.S.A. 84-1-201(37). Unfortunately for FFP, the UCC, which it chose to ignore, defines security interest in a fashion which clearly makes a subject of conversion.

We conclude that a security interest in personal property is a form of property in and of itself. It can be assigned, sold, or otherwise transferred for a valuable consideration. Once it was properly secured, it became an asset of the Bank as if it were property. A security interest can be destroyed by the theft or unauthorized disposition of the collateral. The Bank had a right of ownership in

the inventory of the store, which existed in the form of a lien. If the debt securing the loan was paid, the right of ownership would be extinguished, but if that debt came into default, the right of ownership ripens into a right of possession. We see absolutely no reason why a security interest in personal property cannot be converted, and no authority to the contrary is submitted. We hold that a security interest in personal property properly secured under the UCC can be the subject of conversion and that it was, in fact, converted in this case by FFP.

FFP makes a number of arguments to avoid the results of its decision to ignore the Bank's perfected security interest in the property.

FFP argues the inventory was abandoned and that it had the right to do what it did to protect its store building. The trial court made a factual finding that no abandonment had taken place, and that finding is supported by substantial competent evidence. In addition, even if we were to assume that Collins abandoned the inventory, that fact is no defense to FFP's blatant violation of the Bank's security interest. We refuse to believe that FFP could not have protected its building and the Bank's security interest at the same time.

FFP next argues it did the Bank a favor by converting its inventory. The lack of merit in that argument is so obvious that we decline to respond to it.

Finally, after having blatantly ignored the UCC in almost everything it did, FFP now asks us to apply that body of law to save it from its own excesses. FFP suggests that under the facts, the UCC should control and that the trial court should have found that it disposed of the Bank's property in a commercially reasonable manner. This argument also lacks merit. The UCC provides a civilized judicial method for dealing with disputes of this nature. However, FFP chose self-help over the procedures offered by the UCC. In addition, we are not aware of any provision of the UCC that would allow a landlord to sell its tenant's secured inventory in violation of the rights of the lienholder and then justify that violation because it was "commercially reasonable."

## PUNITIVE DAMAGES

FFP argues the award of punitive damages was erroneous. We disagree.

" 'In Kansas, punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs.' " *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan. App. 2d 1002, 1007, 894 P.2d 260 (1995) (quoting *Folks v. Kansas Power & Light Co.*, 243 Kan. 57, Syl. ¶ 6, 755 P.2d 1319 [1988]).

We have carefully examined the record and the journal entry filed by the trial court. We conclude that in this case the trial court found clear and convincing evidence of willful and wanton conduct by FFP. We agree with that finding. We do not consider it to be an exaggeration to say that FFP's conduct in this case was outrageous. It ignored the efforts of the Bank to assert an interest in the inventory by ordering the Bank's president to leave the premises. It made no effort to either verify the lien of the Bank or to recognize it and made no effort to cooperate with the Bank in an effort to solve the dispute between the parties. Its actions were appalling and worthy of punishment. If we were to permit parties to proceed as FFP did in this case, we would effectively revoke the UCC and turn commercial disputes such as this into almost certain breaches of the peace. We are a government of laws, and individuals who break the law do so at their peril.

"An award of punitive damages must be reviewed in the light of the actual damages sustained, the actual damage award, the circumstances of the case (the nature, extent, and enormity of the wrong), the intent of the party committing the wrong, the relative positions of the plaintiff and the defendant, the defendant's financial worth, and the plaintiff's probable litigation expenses. When reviewing punitive damages, any mitigating circumstances which may bear upon any of the above factors may be considered to reduce such damages. [Citation omitted.]" *Cerretti v. Flint Hills Rural Electric Co-op Ass'n*, 251 Kan. 347, 366, 837 P.2d 330 (1992).

The trial court held a hearing on the issue of punitive damages and, in our judgment, correctly applied all the factors set out above. We finally return to our ultimate standard of review:

"On appeal [from an award of punitive damages], the decision of the trial court will not be reversed unless the appellate court determines that the trial court abused its discretion by affirming an award of punitive damages (1) based on prejudice, passion, or bias; (2) based on a mistake of law or fact; or (3) which lacked evidentiary support. However, if the appellate court determines the trial court did not abuse its discretion in affirming the award of punitive damages, but the award is so excessive and out of proportion as to shock the conscience of the appellate court, the appellate court may tentatively affirm the judgment and allow the plaintiff to either accept a reduced amount or be granted a new trial on the issue of punitive damages." *Folks v. Kansas Power & Light Co.*, 243 Kan. at 77.

Our review of the record makes it clear that the trial court did not abuse its discretion in awarding punitive damages in this case. Further, our collective consciences are not shocked by the amount of the award. To the contrary, we believe this award will reinforce the need to deal with these disputes in the manner provided by law. We doubt that FFP will repeat its cavalier treatment of the rights of a properly secured lienholder, at least in the near future.

Affirmed.