COMMERCE BANK, N.A., Plaintiff,

v.

CHRYSLER REALTY CORPORATION
and DaimlerChrysler Corporation,
Defendants.

Civil Action No. 99–2017–KHV.

United States District Court,
D. Kansas.

Jan. 23, 2002.

James P. O'Hara, Anthony F. Rupp, Andrew M. DeMarea, Shughart, Thomson & Kilroy, Overland Park, KS, for Plaintiff.

Stephen M. Ryan, Michael J. Gorman, Daniels & Kaplan, P.C., Kansas City, MO, Kirkland W. Garey, Michael G. Cruse, Howard, P.C., Bloomfield Hills, MI, for Defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Commerce Bank, N.A. brought this action seeking actual and punitive damages and an accounting for sums which Chrysler Realty Corporation (Chrysler Realty) wrongfully paid to co-defendant Daimler-Chrysler Corporation. This Court granted summary judgment in favor of Commerce on its claim for actual damages, and awarded it $20,000 in punitive damages based on Chrysler Realty's wrongful withholding of $2,000. Defendants appealed. The Tenth Circuit reversed the summary judgment order, vacated the punitive damage award, and remanded for reconsideration "whether Chrysler Realty's position as a prevailing party in this matter justifies a

different amount of punitive damages than the $20,000 previously awarded." *Commerce Bank, N.A., v. Chrysler Realty Corp.*, 244 F.3d 777 (10th Cir.2001) The parties have fully briefed the issue and the Court is ready to rule. For reasons set forth below, the Court finds that Commerce is entitled to punitive damages in the amount of $10,000.

### Background Facts

This Court and the Tenth Circuit have set out the facts underlying this case and the Court will not repeat them here. See *Commerce Bank, N.A., v. Chrysler Realty Corp.*, 86 F.Supp.2d 1087 (D.Kan.1999), vacated by *Commerce Bank*, 244 F.3d 777 (10th Cir.2001). In summary, Commerce asserted that Daimler Chrysler and Chrysler Realty converted funds in which Commerce claimed a perfected security interest. This Court found that defendants had converted $218,000. The Tenth Circuit reversed, finding that DaimlerChrysler was entitled to offset $218,000 which it owed Bierwith (a car dealer which assigned its accounts receivable to Commerce) against any amount which Bierwith owed Chrysler Realty. The Tenth Circuit, however, rejected Chrysler Realty's position that its decision to withhold the $2,000 surplus was insufficient to support an award of punitive damages. The Tenth Circuit remanded for this Court to consider whether Chrysler Realty's position as a prevailing party on the central issue in the case justified a different (presumably lower) amount of punitive damages.

In awarding punitive damages, this Court considered the following facts:

DaimlerChrysler paid Chrysler Realty $2,000 more than Chrysler Realty was entitled to claim from Bierwirth. Although Commerce filed suit on January 15, 1999, Chrysler Realty did not notify DaimlerChrysler, Bierwirth or Commerce of that surplus payment. In fact,

Chrysler Realty did not disclose the payment until the deposition of Thomas H. Noles, the Eastern Area Manager for Chrysler Realty, on May 17, 1999. Mr. Noles testified as follows about the $2,000.00 surplusage:

Q. [ ... ] Why are you holding onto the money?

A. Because there is a lawsuit. I will settle it when the lawsuit is settled.

Q. So, you will hold it as long as you can?

A. Nobody has asked me to give it to them. I would be happy to give it to anybody that deserves it.

Q. I want to be clear about it. This was a conscious decision that you, as the Area Manager of Chrysler Realty, have made, correct?

A. I don't know how conscious it is. I have excess monies, you know, and I didn't know on May 14th that I had excess monies, but since the lawsuit I have been aware that I have excess monies and I figure when the lawsuit is settled, then, yeah, we will give it to you. I don't know who to give it to.

Q. You never asked, correct?

A. No.

Q. My statement is correct?

A. What is your statement?

Q. You have never asked about giving the money back? It has never been tendered?

A. No.

Q. You would agree with me that there is no basis of any kind for Chrysler Realty to be retaining that money, would that be fair?

A. I think that is fair.

Q. Do you think that it is fair that you retain it or that my statement is fair?

A. I think that your statement is fair.

Q. Would you agree with me, that as best you know, at least, there is no basis on which Chrysler Corporation could claim that money, correct?

A. I don't know about Chrysler Corporation. Chrysler Realty has no basis.

Q. Well, Chrysler Corporation hasn't told you, at least, that they have any reason to claim that money, correct?

A. No.

Q. And Chrysler Financial Corporation, your parent company, or the parent company to Chrysler Realty, hasn't asserted any claim to that $2,000 surplusage?

A. Not that I'm aware.

*Commerce Bank*, 86 F.Supp.2d at 1089–90.

This Court in its original ruling awarding punitive damages stated as follows:

The conduct of Mr. Noles in failing to return the $2,000.00 surplus displayed an attitude of conscious disregard for the legal rights of plaintiff. In addition, because defendants refused to provide Commerce an accounting, one may reasonably infer that Mr. Noles intentionally concealed the $2,000.00 surplus throughout the litigation, until his deposition. Further, although the record does not contain any evidence that defendants expressly ratified the conduct of Mr. Noles, he is the Eastern Manager of [Chrysler Realty] and reports to Dana Coventry, the CRC Director—Managing Properties and Facilities, who in turn reports to [Chrysler Realty] President Joe Shady. The Court infers from this evidence that Mr. Noles had the authority to act on behalf of [Chrysler Realty] in this matter.

At trial, the Court received testimony from defendants' former attorney in this matter, Michael Cruse. Mr. Cruse testified that after the Noles deposition, he discussed the $2,000.00 surplus with plaintiff's attorney, James O'Hara. Mr. Cruse testified that he had not known about the money, but that he offered to tender it to plaintiff. According to Mr. Cruse, Mr. O'Hara responded that he wanted to think about it. Mr. Cruse stated that he told Mr. O'Hara to "let [him] know," but that he heard nothing further from Mr. O'Hara. Defendants did not tender the funds or make a written offer to do so.

.    .    .    .    .

[Chrysler Realty]'s highest annual gross income for the years 1993–1997 was $122.4 million. Chrysler's highest annual gross income for the period 1993–1997 was $61,397 million.

Neither party presented evidence whether [Chrysler Realty] or Chrysler have changed any policies or procedures as a result of the deterrent effect of this litigation. Nor have they suggested that other damages and punishment have been imposed in prior cases. Commerce has incurred approximately $66,378.33 in legal fees in pursing this litigation.

*Id.* at 1091.

Although this Court rejected defendants' position on the issue of set-off, in ruling on punitive damages it found that defendants did not unreasonably interpret the U.C.C. or existing case law. Thus, although this Court ultimately found that defendants had converted $216,000 in accounts receivable, it found that they retained those funds in good faith and with a commercially reasonable basis for doing so.

## Analysis

"In Kansas, punitive damages are awarded to punish the wrongdoer for his malicious, vindictive, or willful and wanton

invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan.App.2d 1002, 1007, 894 P.2d 260, 265 (1995) (quotations omitted); *Mohr v. State Bank of Stanley*, 241 Kan. 42, 56–57, 734 P.2d 1071, 1082 (1987) (conversion of checks where corporate officer deposited proceeds in personal account; though bank was negligent record contained no evidence that it engaged in vindictive conduct, intentional wrongdoing or wanton invasion of plaintiff's rights; punitive damage ward therefore reversed).

■ Kansas law provides that to recover punitive damages, plaintiff must prove by clear and convincing evidence that defendant acted with willful conduct, wanton conduct, fraud or malice. See K.S.A. § 60–3701(c). Punitive damages may not be assessed against a principal or employer for the acts of an agent or employee unless the questioned conduct was authorized or ratified by a person expressly empowered to do so on behalf of the principal or employer. See K.S.A. §§ 60–3701(b), 3702(b).

■ The Court reiterates its prior finding that Chrysler Realty (through Mr. Noles) acted wantonly by retaining $2,000 in surplus funds with knowledge that Chrysler Realty had no legal right as to the funds. As the Tenth Circuit has concluded, this action justifies an award of punitive damages. In cases in which exemplary or punitive damages are recoverable, the Court may consider in determining the amount of punitive damages to be awarded:

(1) The likelihood at the time of the alleged misconduct that serious harm would arise from the defendant's misconduct;

(2) the degree of the defendant's awareness of that likelihood;

(3) the profitability of the defendant's misconduct;

(4) the duration of the misconduct and any intentional concealment of it;

(5) the attitude and conduct of the defendant upon discovery of the misconduct;

(6) the financial condition of the defendant; and

(7) the total deterrent effect of other damages and punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, compensatory, exemplary and punitive damage awards to persons in situations similar to those of the claimant and the severity of the criminal penalties to which the defendant has been or may be subjected.

K.S.A. §§ 60–3701(b), 3702(b). When the Tenth Circuit reversed this Court's decision on the principal issue, it altered the relevant facts in one regard, in that Chrysler Realty has now prevailed on the set-off issue. In light of this changed circumstance, the Court will reconsider each factor in turn.

The first two factors—the likelihood at the time of the alleged misconduct that serious harm would arise from defendant's misconduct, and the degree of defendant's awareness of that likelihood—weigh against any substantial award of punitive damages. The likelihood of serious harm from defendant's wrongful retention of $2,000, and Chrysler Realty's awareness of that harm, are extremely low. The profitability of the misconduct also weighs heavily against a substantial award of punitive damages. Further, the amount of profit compared with the net worth of Chrysler Realty weighs against a significant award.

As for the duration of the misconduct and any intentional concealment of it, Chrysler Realty retained the $2,000 over

the course of this litigation, but evidence of intentional concealment is not particularly strong. Chrysler Realty's attitude and conduct upon discovery of the misconduct, however, is troublesome. Even after Mr. Noles testified that the money was surplusage, Chrysler Realty did not tender it to Commerce. Chrysler Realty knew that it did not rightfully hold the funds but it decided not to return them unless forced to do so by court order or settlement of the larger issues between the parties. Chrysler Realty's attitude and conduct upon discovery of the misconduct favors a much higher award of punitive damages. The fact that Chrysler Realty ultimately prevailed on the set-off issue, however, militates for a somewhat lower punitive damage award than this Court originally ordered.

The next factor, Chrysler Realty's financial condition, weighs in favor of a significant punitive damage award. Chrysler Realty's highest annual gross income for the years 1993–1997 was $122.4 million. As a substantial company, it had no colorable excuse for retaining $2,000 to which it had no legal right. The final factor is the total deterrent effect of other damages and punishment imposed upon defendant as a result of the misconduct. Neither party has presented evidence as to this factor.

The Court has considered all of these factors in arriving at an amount of punitive damages which will be sufficient to punish Chrysler Realty for its wrongful conduct and deter it and others from similar misconduct in the future. The Court believes that the sum of $10,000 is a sufficient award to accomplish these ends.

**IT IS THEREFORE ORDERED** that plaintiff is entitled to $10,000 in punitive damages for the wanton or willful conduct

of Chrysler Realty Corporation. The Clerk is directed to enter judgment for plaintiff and against Chrysler Realty Corporation in the amount of $10,000.