Nos. 116,117
116,543

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EVELYN HARDER,
*Appellant*,

v.

RONALD H. FOSTER, *et al.*,
*Appellees*.

SYLLABUS BY THE COURT

1.

A court may not award attorney fees absent statutory authority or an agreement by the parties.

2.

The merger doctrine stands for the principle that a contract merges into a judgment entered upon it, and the judgment thereafter defines the parties' legal rights. Under the merger doctrine, postjudgment attorney fees are generally not recoverable unless the contract has specifically provided for postjudgment attorney fees.

3.

The meaning of the term postjudgment is clear. It means actions after the judgment is final. It does not mean actions that occur postverdict but prefinal judgment, such as motions to set aside the verdict, or other challenges to the verdict or decision, before a final judgment is issued resolving all issues.

4.

Waiver is an affirmative defense under Kansas law. K.S.A. 2016 Supp. 60-208(c)(1)(Q).

5.

An affirmative defense cannot be raised *sua sponte* by the court, and consideration of such defenses constitutes error.

6.

The Uniform Fraudulent Transfer Act (UFTA) provides remedies to creditors when debtors engage in fraudulent transfers. K.S.A. 33-201 *et seq*.

7.

The UFTA does not explicitly authorize attorney fees. K.S.A. 33-207(a)(3)(c).

8.

Because Kansas has adopted what is known as the American rule that proscribes courts from awarding attorney fees unless specifically authorized by statute or contract, the language of the UFTA allowing creditors to set aside fraudulent conveyances and "any other relief the circumstances may require" does not allow for the recovery of attorney fees related to bringing an action against the wrongdoer. K.S.A. 33-207(a)(3)(C).

9.

Kansas recognizes one exception to the American rule, known as the third-party litigation exception. When the plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant, the plaintiff may recover attorney fees even if they are not explicitly allowed by statute or contract. This is because they are viewed as a separate measure of damages collaterally related to the tortious act.

10.

In order for the third-party exception to the American rule to apply, a plaintiff must show that (1) the defendant committed a tort or violated a contractual duty; (2) third-party litigation is the natural and proximate consequence of the defendant's wrongdoing; (3) it was necessary for the claimant to engage in the third-party litigation; and (4) the claimant exercised good faith in the third-party litigation.

11.

In applying the third-party litigation exception to the American rule, if the third party and wrongdoer are tried in the same case, the claimant can only recover attorney fees that were necessary as to the third party.

12.

Claimants cannot raise the third-party litigation exception when the third party is a joint tortfeasor with the wrongdoer, or where the third party and defendant are in privity.

13.

The UFTA provides that the common law principles "supplement its provisions." K.S.A. 33-210. Therefore, the third-party litigant exception to the American rule is applicable to UFTA cases.

14.

In the absence of statutory authority in Kansas, a claim for punitive damages does not survive the death of the wrongdoer.

Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed July 28, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Kurt S. Brack*, of Overland Park, for appellant.

3

*Gary A. Nelson*, of Leavenworth, for appellee Estate of Ronald Foster.

*William E. Pray*, of Leavenworth, for appellee Terrie Foster.

Before ARNOLD-BURGER, C.J., GREEN and MCANANY, JJ.

ARNOLD-BURGER, C.J.:  Evelyn Harder bought property with a house, dam, and lake from Ronald Foster. Shortly thereafter, Harder discovered that the dam, which Foster had assured her did not have any problems, was in fact illegal and would need extensive repairs. Harder filed suit against Foster, and the jury found Foster guilty of negligent misrepresentation, intentional misrepresentation, and breach of contract. The parties' Residential Real Estate Contract provided that the party who breached the contract would pay any attorney fees the nonbreaching party incurred "in connection with the default," so Harder filed a motion requesting attorney fees incurred up through the verdict. The court granted her motion for attorney fees, but the issue took months to litigate. Harder filed a second motion for attorney fees requesting compensation for the fees generated while litigating the first motion. The district court denied her motion, holding that the fees incurred defending the first award of attorney fees were not generated "in connection with the default." Foster appealed.

After the trial and the first motion for attorney fees, Harder filed a second lawsuit against Foster, three of his children, and his son-in-law. Her petition alleged that Foster had fraudulently transferred all of the proceeds of the property sale to his family members for no consideration, leaving him unable to satisfy the judgment. She asked "to have the transfers avoided, set aside, and held for naught; for an attachment of the assets transferred; for execution on the transferred assets; and for injunctive relief prohibiting further disposition of the transferred assets." She later asked the court for leave to amend her petition to add a claim for punitive damages. Foster died a few months later, and his estate was substituted as a party. The estate then paid the judgment from the first case in

4

full and filed a motion for summary judgment on Harder's second lawsuit. The district court granted the motion, holding that payment of the judgment extinguished Harder's fraudulent conveyance claim. Foster appealed the district court's grant of summary judgment to Foster and the denial of her request to amend her petition. Both cases were consolidated on appeal.

We find that the district court erred when it held that attorney fees generated defending the verdict and first award of attorney fees were not generated "in connection with the default." Harder is allowed to recover attorney fees generated in defending against attacks on the verdict and her first award of attorney fees. We further find that the district court erred when it granted Foster's motion for summary judgment in the second case because, while the judgment was satisfied, Harder still had a potential claim against Foster's estate under the Uniform Fraudulent Transfer Act (UFTA) for attorney fees under the third-party litigation exception if she can prove it applies. Finally, because a party cannot recover punitive damages from a deceased wrongdoer, the district court decision denying the punitive damages claim was correct and is affirmed. Both cases are reversed solely as to the issue of attorney fees. Both cases are remanded to the district court for consideration of an award of attorney fees against Foster's estate.

FACTUAL AND PROCEDURAL HISTORY

Harder was searching for a house to purchase when she saw an advertisement for a property owned by Foster in Easton, Kansas. She visited the property in 2012. A house, lake, and dam sat on the 31.2 acre property. Harder and Foster entered into a Residential Real Estate Sale Contract. Foster executed a Seller's Disclosure and Condition of Property Addendum the same day, which required Foster to disclose to Harder "all material defects, conditions and facts [known to Foster] which may materially affect the value of the Property." Foster's disclosure stated that there were no problems with the land, no environmental issues, no legal issues, and no problems with the property in

5

general. The price for the property was $405,000 and closing was scheduled for July 6, 2012.

Before closing, Harder discovered a 2007 letter from the State to Foster informing him that the dam on the property was illegal and needed repairs. Prior to finalizing the purchase, Harder asked for reassurance from the county that the dam was fixed to the State's satisfaction. Foster told Harder that, to the best of his knowledge, the dam had been fixed and did not need further repairs. Harder purchased the property in 2012.

In 2013, the State informed Harder that the dam was illegal because it lacked a permit, and obtaining a permit would require extensive repairs to the dam. Harder filed suit against Foster in August 2013 (the 2013 case). Harder's petition alleged negligent misrepresentation, intentional misrepresentation, violation of the Kansas Consumer Protection Act, and breach of contract. The district court dismissed the Kansas Consumer Protection Act claim before trial on Foster's motion for summary judgment. After trial, the jury found that Foster was guilty of negligent misrepresentation, intentional misrepresentation, and breach of contract. The jury awarded Harder $225,116 in actual damages but found that she was not entitled to punitive damages. The journal entry of the verdict was filed on December 10, 2014.

After trial, Foster filed a motion to alter, amend, and set aside and for judgment as a matter of law. Harder filed a motion for attorney fees, a motion for imposition of a constructive trust, and a motion to amend the pretrial order. The court denied Foster's motion to alter, amend, and set aside the judgment, and the court also denied Harder's motion for imposition of constructive trust.

Then, the district court addressed Harder's motion for attorney fees. The parties' Residential Real Estate Sale Contract required the defaulting party to reimburse the nondefaulting party for attorney fees, court costs, and other legal expenses incurred "in

6

connection with the default." Harder's claim for attorney fees was not included on the pretrial order, which is why she also filed the motion to amend the pretrial order. Harder's request for attorney fees did appear on her pretrial questionnaire. Foster opposed Harder's request for attorney fees because she did not include the request in her petition or present evidence on attorney fees at trial. Foster also noted that the request was not in the pretrial order. The district judge stated that he recalled a discussion, possibly at the pretrial conference, that the parties agreed to decide the attorney fees issue after the jury returned a verdict. Harder's attorney remembered a similar discussion. The district judge stated that he "relied upon the pretrial questionnaires in formulation of the pretrial order" and that he did not have an explanation for why he failed to include the attorney fees issue from Harder's pretrial questionnaire in the pretrial order. Based on his recollection that the parties agreed to deal with the issue after the trial, the judge granted Harder's request to amend the pretrial order. The judge also granted Harder's request for attorney fees, ordering Foster to pay Harder $51,862 in attorney fees and $13,871.34 in legal expenses and court costs.

In March 2015, Foster filed a motion to alter, amend, and set aside the district court's order amending the pretrial order and judgment for attorney fees and costs. The district court heard arguments on this motion on October 30, 2015. Foster's attorney began by reminding the district judge that his decision to allow an amendment to the pretrial order was based on the judge's recollection of the parties' agreement. Foster's attorney had gone back and listened to the proceedings and did not find a record of any conversation in which the parties agreed to deal with the attorney fees issue after trial. The judge agreed that he had looked through the record and had not found evidence of the agreement that he had recollected at the previous hearing. Instead of ruling on the motion that day, the judge continued the hearing to give Harder's attorney an opportunity to search the record for evidence that the parties actually agreed to defer the attorney fees issue until after the trial. The parties reconvened on December 1, 2015. Harder's attorney admitted that he had not found anything in the record to substantiate the recollection that

the parties had agreed to submit that attorney fees issue to the judge after trial as opposed to the jury. However, the district judge upheld his prior order amending the pretrial order and granting Harder attorney fees, stating that he was "persuaded that it was not error to handle the attorney's fees as it was handled in this case . . . ."

Harder filed a second motion for attorney fees on March 10, 2016. The district court's first award of attorney fees compensated Harder for fees generated through December 16, 2014. However, Harder continued to generate attorney fees after that date because she had to defend against Foster's motion to alter, amend, and set aside and for judgment as a matter of law and Foster's challenges to the district court's granting of Harder's first motion for attorney fees.

The district court heard the motion on May 4, 2016. Harder began by noting that after the first award of attorney fees Foster filed motions attempting to set aside the verdict and the court's award of attorney fees. Then, Harder reminded the court that the Residential Real Estate Sale Contract required the defaulting party to reimburse the nondefaulting party for all attorney fees and expenses incurred "in connection with the default." Foster argued that the court should deny the motion because Harder was attempting to collect fees incurred postjudgment and that the fees were "not related to the default, they're related to various and assorted motions that were filed by both parties, and responses." Foster argued that the default had been finalized in the court's December 10, 2014, journal entry reflecting the jury verdict.

The district judge noted that most of the work the attorneys had done was related to the first motion for attorney fees and the confusion over whether or not parties intended the claim for attorney fees to be included in the pretrial order. The judge recalled the "comedic series of . . . errors" that gave rise to the issues in the first motion for attorney fees:  the court's inadvertent mistake in failing to include the attorney fees issue on the pretrial order despite its appearance on Harder's pretrial questionnaire; the

8

mistaken recollection that the parties had agreed to determine the attorney fees issue after the trial; and the amount of time spent looking for evidence to support the recollection. The district judge then held that "none of this had anything to do with actions of the defendant" and that "[t]he jury verdict had nothing to do with the attorney's fees." Based on this, the district judge denied Harder's second request for attorney fees. The judge stated that "the amount of time that was devoted really related to certain failures of [Harder]'s counsel to present a record supporting the award of attorney's fees." The judge characterized Foster's actions as "legitimate and meritorious positions to advocate. And they were not related to the default but were related to actions in the course of the litigation."

In February 2015, after the district court had awarded Harder attorney fees but before Foster filed his motions contesting the attorney fees award, Harder initiated a second lawsuit against Foster (the 2015 case). This time, Harder filed a petition to set aside fraudulent conveyances. Harder's petition alleged that Foster had used the $405,000 in proceeds from selling his property to purchase a house and a car. Foster then gave the house and car, as well as the remaining proceeds from the property sale, to his children for no consideration. Harder alleged that these transfers resulted in Foster becoming insolvent. Harder ultimately included Foster's children and son-in-law in the petition to force them "to return funds wrongfully transferred to them by Ronald Foster." Harder later filed a motion requesting leave to file an amended petition to include a claim for punitive damages.

Foster died in September 2015 and his estate was substituted as a party.

In March 2016, Foster's estate paid $309,017.14 to the district court, which ordered payment of the funds to Harder. In July 2016, Foster filed a motion for summary judgment on Harder's fraudulent conveyances petition. Foster argued that Harder's case was moot because her judgment had been satisfied.

9

The district court heard Harder's motion to amend her petition to add punitive damages and Foster's motion for summary judgment on September 7, 2016. The district judge asked Harder how satisfaction of the judgment had not extinguished her claim, stating "once you lose that status as a judgment creditor by the payment of your judgment, you have no cause of action to set aside any transfers that [Foster]'s made because your judgment's been paid." Harder disputed that the judgment had been fully paid, noting that her second motion for attorney fees in the 2013 case was on appeal and could result in the judgment being increased. But, even if the judgment was satisfied, Harder argued that the UFTA recognized her as a creditor because she was "still owed funds in attempting to set aside these transfers." Harder explained that Foster transferred his assets for no consideration the day after he received the demand letter, and that if she had not initiated suit to set aside the transfers, she likely never would have been paid. The district judge kept returning to the point that the judgment for the 2013 case had been satisfied in full. Harder explained that "the damages that are sought in this case have nothing to do with the judgment or attorney's fees that have been sought in the 2013 case." Harder argued that she incurred damages because Foster took "steps to hinder, delay, and . . . defraud" Foster by transferring his assets—had Foster kept the money from the property sale in his bank account Harder could have issued a simple garnishment check.

The district judge granted Foster's motion for summary judgment. The district court held that payment of the judgment extinguished Harder's fraudulent conveyance claim. The district judge ruled that, despite the fact that Harder's second motion for attorney fees was on appeal, there was still a final judgment in the 2013 case and it had been paid in full. The judge also ruled that there was no statutory basis for awarding Harder "expenses associated with prosecuting the present action." The district court also denied Harder's motion to amend her petition to add a claim for punitive damages because "[w]ithout actual damages a party cannot recover just punitive damages."

10

Harder's 2013 and 2015 cases were consolidated for this appeal. Harder appeals the district court's decision to deny her second motion for attorney fees in the 2013 case. Harder also appeals the district court's grant of summary judgment to Foster and the district court's denial of her request to amend her petition to include a claim for punitive damages in the 2015 case.

ANALYSIS

*The district court erred in denying Harder's second motion for attorney fees and costs in the 2013 case.*

Harder argues that the district court erred in denying her second motion for attorney fees in the 2013 case. Harder's first motion for attorney fees, which was granted on February 11, 2015, compensated her for legal expenses incurred up until December 16, 2014. In her second motion for attorney fees, Harder sought to recover fees and expenses incurred after December 16, 2014, through January 22, 2016. The jury verdict was journalized on December 10, 2014. Foster's counsel filed a variety of posttrial motions attacking the verdict and requests for attorney fees. Harder's counsel successfully defended against Foster's motion to alter, amend, and set aside and for judgment as a matter of law. Harder's counsel also filed two successful motions—a motion to amend the pretrial order and the first motion for attorney fees.

The district court denied Harder's second motion for attorney fees in May 2016 on two grounds. First, the court held that Harder waived any request for fees incurred between December 17, 2014, and February 11, 2015. The district judge said that, because a portion of the fees requested in the second motion occurred before the court decided the first motion on February 11, 2015, any request for attorney fees generated between December 2014 and February 11, 2015, had been waived. Second, the district judge held that the remainder of the fees requested were not generated in connection with the

11

default, but rather were related to litigating the first motion for attorney fees. The judge believed that "the amount of time that was devoted really related to certain failures of Plaintiff's counsel to present a record supporting the award of attorney's fees."

The issue of the district court's authority to award attorney fees is a question of law over which appellate review is unlimited. *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 942, 305 P.3d 622 (2013). A court may not award attorney fees absent statutory authority or an agreement by the parties. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Here, the basis for Harder's request for attorney fees was the Residential Real Estate Sale Contract. The relevant provision states:

> "If as a result of a default under this Contract, either SELLER or BUYER employs an attorney to enforce its rights, the defaulting party will, unless prohibited by law, reimburse the non-defaulting party for all reasonable attorney fees, court costs and other legal expenses incurred by the non-defaulting party in connection with the default."

An appellate court exercises unlimited review over the interpretation and legal effect of written instruments, and an appellate court is not bound by the trial court's interpretation of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op,* 299 Kan. 360, 366, 323 P.3d 1270 (2014). "The primary rule for interpreting written contracts is to ascertain the parties' intent." *Anderson v. Dillard's, Inc.*, 283 Kan. 432, 436, 153 P.3d 550 (2007). "An interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners." *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10, 13 P.3d 351 (2000). Additionally, "[t]he law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided." 28 Kan. App. 2d at 10-11.

12

*Harder's requested fees and costs were generated in connection with the default under the contract.*

A jury found that Foster was the defaulting party under the contract. Harder hired an attorney to enforce her rights under the contract, so under the plain language of the contract Foster was required to reimburse Harder for attorney fees. The issue is whether defending against an attack on the verdict and the first award of attorney fees is connected to the default.

The district judge engaged in a very narrow reading of the contract. He held that the posttrial challenges Foster made were "not related to the default but were related to actions in the course of the litigation." Specifically, "the amount of time that was devoted really related to certain failures of Plaintiff's counsel to present a record supporting the award of attorney's fees." The judge said that the attorney fees claimed in the second motion were not "necessitated or brought about by any action of the defendant related to default."

Foster's attack against the verdict attempted to overturn the jury's finding that Foster defaulted. It is difficult to imagine how that is not connected to the default. The district court did not attempt to parse the time Harder's counsel spent defending the verdict and defending the award of attorney fees—the court just refused to consider all of the fees because some were generated while defending the award of attorney fees. Therefore, the district court erred by failing to provide a reason for rejecting Harder's request for attorney fees generated while protecting the verdict.

The district court also erred when it held that costs incurred defending the first award of attorney fees award were not connected to the default under the contract. In reaching this holding, the district court read limitations into the contract's attorney fees provision that were not contained in the plain language of the contract. Nothing in the

13

provision limits the attorney fees award to fees incurred before the verdict. The contract does not say "the defaulting party will reimburse the nondefaulting party for all reasonable attorney fees incurred *before* a determination of default," it says that the defaulting party will reimburse the nondefaulting party for attorney fees incurred "in connection with the default." Furthermore, the contract does not say that the fees are limited to those *caused* by the defaulting party, as the district judge suggested when he said that "none of this had anything to do with actions of the defendant." The contract uses the word "connected," which is a broader word than "caused." If things are connected they simply display a logical relationship. Webster's Ninth New Collegiate Dictionary 278 (9th ed. 1991). But to "cause" something to happen is to bring about a result. Webster's Ninth New Collegiate Dictionary 217 (9th ed. 1991).

A useful way of thinking about the situation is to consider whether the attorney fees would have been incurred if Foster had not defaulted under the contract. If Foster had not defaulted, there would not have been a judgment and there would have been no reason for Harder to defend against postjudgment motions. If Foster had not defaulted, Harder would not have the right to attorney fees. In this way, the attorney fees requested in Harder's second motion were connected to the default. Another way to think about the situation is to imagine the outcome if Harder's attorney had ceased working and incurring fees after December 16, 2015. Foster would have filed uncontested motions attacking the verdict and award of attorney fees. Had Foster's motions been successful, the verdict could have been overturned and Harder could have lost the award of attorney fees that she was entitled to as the nondefaulting party.

The phrase "in connection to the default" is similar to the contracts principle of consequential damages, although attorney fees are not considered consequential damages. See *Neighbors Construction Co. v. Woodland Park at Soldier Creek*, 48 Kan. App. 2d 33, 56, 284 P.3d 1057 (2012). This principle is that damages for breach of contract "are limited to those damages which may fairly be considered as arising, in the usual course of

14

things, from the breach itself, or as may reasonably be assumed to have been within the contemplation of both parties as the probable result of the breach." *Kansas State Bank v. Overseas Motosport, Inc.*, 222 Kan. 26, 27, 563 P.2d 414 (1977). Here, the parties agreed that the defaulting party would pay the attorney fees of the nondefaulting party. Thus, payment of attorney fees was within the contemplation of the parties at the time of contracting. It is reasonably foreseeable that, should the defaulting party attempt to evade its duty to pay attorney fees, the nondefaulting party would incur even more attorney fees defending its rights under the contract. It was reasonably foreseeable to Foster that Harder would defend her rights under the contract, the rights that were only bestowed upon Harder because Foster defaulted.

For these reasons, the district court erred when it held that the fees requested in Harder's second motion for attorney fees were not connected to the default.

*The merger doctrine does not bar Harder's second motion for attorney fees.*

Foster argues that Harder should not be allowed to recover attorney fees because the contract "does [not] have a provision that applies to post judgment collection." Foster characterizes Harder's argument as asking "this Court to [rewrite] the contract and grant her attorney's fees and cost[s] related to post judgment motions and collection matters, not the default." In essence, Foster is asserting that the merger doctrine prohibits collection of any sums outside the four corners of the journal entry. In fact, Foster cites *Arbor Lake v. Enterprise Bank & Trust*, No. 109,757, 2014 WL 4723732 (Kan. App. 2014) (unpublished opinion), for its application of the merger doctrine and thereby suggests, without further explanation, that the merger doctrine is at play here.

The merger doctrine stands for the principle that a contract merges into a judgment entered upon it, and the judgment "thereafter defines the parties' legal rights." 2014 WL 4723732, at *7. In other words, once the judgment on the contract is final, it is the

15

judgment that defines the rights of the parties, basically extinguishing the contract. The judgment caps the liability of the parties under the contract. Under the merger doctrine, postjudgment attorney fees would not be recoverable. But sophisticated parties may contract around the merger doctrine, for example, by agreeing in the contract to a postjudgment interest rate on any recovery or postjudgment attorney fees. See *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009) (postjudgment interest); *In re A & P Diversified Technologies Realty, Inc.*, 467 F.3d 337, 343 (3d Cir. 2006) (postjudgment attorney fees); *Master Finance Co. of Texas v. Pollard*, 47 Kan. App. 2d 820, 827, 283 P.3d 817 (2012) (parties can contract regarding postjudgment interest); *Accubid v. Kennedy*, 188 Md. App. 214, 237, 981 A.2d 727 (2009) (postjudgment attorney fees).

Because Foster relies on *Arbor Lake,* we will examine it more closely. The case involved a failed real estate venture. Arbor Lake obtained a loan from Enterprise Bank (a successor in interest from another bank) to complete a development that another corporation could not continue. Two individuals and two trusts signed guaranty agreements for the loan. When Arbor Lake defaulted on the loan, Enterprise obtained a judgment against Arbor Lake. After the judgment, the district court ordered foreclosure and sale of the Arbor Lake property. Enterprise made the highest bid. The district court confirmed the sale. Arbor Lake appealed the confirmation order, arguing that the district court should have refused to confirm the sale because it was substantially inadequate. The "narrow issue [on appeal] focuse[d] on how the proceeds from the foreclosure sale should be credited against the guarantors' obligations." 2014 WL 4723732, at *4. The judgment itself was not being appealed—the issues on appeal related to postjudgment matters. Enterprise also obtained a judgment against the guarantors in 2012. *Enterprise Bank & Trust v. Prieb*, No. 107,448, 2013 WL 1859202, at *1 (Kan. App. 2013) (unpublished opinion) (*Prieb I*).

After oral argument in *Arbor Lake*, Enterprise filed motions to recover its appellate attorney fees from Arbor Lake and the guarantors. 2014 WL 4723732, at *10.

16

Kansas Supreme Court Rule 7.07(b) (2013 Kan. Ct. R. Annot. 67) "permits a party to recover attorney fees on appeal if the district court had authority to award them." 2014 WL 4723732, at \*10. Enterprise argued that the district court had authority to award attorney fees pursuant to the loan documents, which "required Arbor Lake and the guarantors to pay attorney fees and costs associated with collection of the debt." 2014 WL 4723732, at \*10. The *Arbor Lake* court found that the merger doctrine extinguished Enterprise's contractual right to recover attorney fees, and the court denied Enterprise's motions. 2014 WL 4723732, at \*10. The *Arbor Lake* court gave the following analysis, which is the analysis Foster relies upon in his appeal:

> "As to Arbor Lake, Enterprise Bank cites language from the loan and the mortgage to support its right to postjudgment attorney fees. But those provisions specifically address attorney fees or other costs of enforcing the agreement—not later judgments. The same is true of the terms Enterprise Bank relies on in the guaranties to impose liability on the guarantors. That sort of terminology referring to the contracts is insufficient to create a right to recover attorney fees for enforcement of judgments. See *In re A & P Diversified Technologies Realty, Inc.*, 467 F.3d at 343; *Accubid*, 188 Md. App. at 237. Courts will enforce contract provisions that either explicitly permit recovery of postjudgment attorney fees or more broadly abrogate the merger doctrine. *Accubid*, 188 Md. App. at 237. Enterprise Bank points to no such provisions applicable to Arbor Lake or the guarantors." 2014 WL 4723732, at \*10.

The court added that Enterprise sought "attorney fees not for obtaining the judgment against the guarantors—but for enforcing the judgment, to which the merger doctrine does apply." 2014 WL 4723732, at \*10. When Enterprise pointed out the fact that it had been awarded attorney fees in *Prieb I*, the direct appeal of the judgment, the *Arbor Lake* court said: "We suppose the merger doctrine may have been inapplicable in *Prieb I* because that appeal simply continued the guarantors' resistance to Enterprise Bank's efforts to *obtain* an enforceable judgment to remedy breaches of the guaranty agreements." 2014 WL 4723732, at \*11.

17

There are several problems with applying *Arbor Lake* to the present situation. First, Harder was not engaging in postjudgment collection or enforcement. The meaning of the term postjudgment is clear. It means actions after the judgment is final. It does not mean actions that occur postverdict but prefinal judgment, such as motions to set aside the verdict, or other challenges to the verdict or decision, before a final judgment is issued resolving all issues. Here, the postverdict litigation was simply a continuance of Foster's resistance to Harder's efforts to obtain an enforceable judgment for damages and attorney fees. The contract did not merge into the judgment on the date of the jury verdict because the judgment was not yet final as to all issues. The journal entry memorializing the jury verdict anticipates this—it states that the attorney fees issue would be litigated at a subsequent hearing. Thus, Harder was still in the process of obtaining an enforceable judgment when she incurred the expenses requested in her second motion for attorney fees.

The merger doctrine may bar Harder from requesting attorney fees under the contract if she, at a later point in time, initiates another lawsuit seeking to collect the damages and attorney fees she won in the 2013 case. That is the type of postjudgment enforcement that the *Arbor Lake* court was discussing. After the judgment in that case, Arbor Lake's property was sold to enforce the judgment. Arbor Lake and the guarantors contested the sale of the property, not the underlying judgment. Enterprise incurred attorney fees defending the sale of the property. The parties were no longer litigating the loan agreement—they were litigating an attempt to enforce the judgment earned by virtue of the loan agreement.

The *Arbor Lake* court noted that the merger doctrine probably would not have barred Enterprise from collecting the fees incurred in *Prieb I*. *Prieb I* was the case in which the guarantors actually appealed the underlying judgment ordering them to pay Enterprise pursuant to their guaranty agreements. While this statement by the *Arbor Lake* court is dictum, it makes sense. In *Prieb I*, Enterprise incurred fees while defending the

underlying judgment on appeal. The guaranty agreement required the guarantors to pay Enterprise the attorney fees and other costs of enforcing the agreement. On appeal, Enterprise was still in the process of defending the judgment it gained pursuant to the agreement. Harder's situation is more analogous to the procedural posture of *Prieb I* than *Arbor Lake* because Harder was still in the process of defending her judgment when she incurred the fees she requested.

Harder's second motion for attorney fees was not an attempt at postjudgment enforcement of the Residential Real Estate Sale Contract. The contract entitled Harder to a judgment of attorney fees, and Harder incurred fees in obtaining and defending that judgment. Accordingly, her request was not be barred on the grounds of the merger doctrine.

*Harder did not waive her right to attorney fees generated between December 2014 and February 2015.*

The district court also erred in holding that Harder waived her request for attorney fees generated between December 16, 2014, and February 11, 2015. "Waiver is the intentional relinquishment of a known right." *Razorback Contractors v. Board of Johnson County Comm'rs*, 43 Kan. App. 2d 527, 545, 227 P.3d 29 (2010). Waiver is an affirmative defense under Kansas law. K.S.A. 2016 Supp. 60-208(c)(1)(Q). "The party raising an affirmative defense such as waiver bears the burden of proving the defense." *Lyons v. Holder*, 38 Kan. App. 2d 131, 139, 163 P.3d 343 (2007). An affirmative defense "cannot be raised by the court, and consideration of such defenses constitutes error." *Coffman v. State*, 31 Kan. App. 2d 61, 67, 59 P.3d 1050 (2002). Here, the district court raised the issue of waiver *sua sponte*. It was not in Foster's motion opposing Harder's request for attorney fees, and Foster does not attempt to buttress the district court's holding in his appellate brief. Because waiver is an affirmative defense that must be

19

proven by the party raising it, the district court erred when it raised the issue on its own initiative.

*Conclusion*

Foster's attack on the first award of attorney fees was an attempt to sidestep a requirement of the contract—that the defaulting party pay the attorney fees of the nondefaulting party. Foster was not contesting the amount of attorney fees, he was arguing that he should not have to pay the attorney fees at all because they were inadvertently left out of the pretrial order. Harder incurred further attorney fees in defending her rights under the contract. These fees are not barred by the merger doctrine, because Harder was in the process of obtaining the fees, not attempting to enforce the judgment. The district court erred when it held that the fees generated in defending the postverdict motions were not generated in connection with the default and therefore not recoverable.

Accordingly, we must remand the 2013 case for a determination of the amount of attorney fees to be awarded, a fact that remains in the sound discretion of the district court. *Snider*, 297 Kan. at 169.

*The district court erred when it granted Foster's motion for summary judgment in the 2015 case.*

Harder also argues that the district court "ignored the plain language of the UFTA" when it granted Foster's motion for summary judgment in the 2015 case.

"Summary judgment is appropriate when the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as

20

a matter of law." *Bergstrom v. Noah*, 266 Kan. 847, 871, 974 P.2d 531 (1999). The parties do not dispute the facts of the 2015 case. Where there is no factual dispute, appellate review of an order regarding summary judgment is de novo. *Martin v. Naik*, 297 Kan. 241, 246, 300 P.3d 625 (2013). Issues of statutory interpretation are also reviewed de novo. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

Kansas adopted the UFTA, K.S.A. 33-201 *et seq.*, in 1998. L. 1998, ch. 13, sec. 1. The UFTA provides remedies to creditors when debtors engage in fraudulent transfers. K.S.A. 33-204 (explaining what constitutes a fraudulent transfer); K.S.A. 33-207 (listing creditors' remedies). The UFTA defines "[c]reditor" as "a person who has a claim." K.S.A. 33-201(d). "Claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." K.S.A. 33-201(c). K.S.A. 33-204(a) explains when a transfer is fraudulent. A transfer is fraudulent if the debtor made the transfer:

"(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
"(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(B) intended to incur, or believed or reasonably should have believed that such debtor would incur, debts beyond such debtor's ability to pay as they became due."
K.S.A. 33-204(a).

K.S.A. 33-204(b) lists several badges of fraud, which are "circumstance[s] generally considered by courts as . . . indicator[s] that a party to a transaction intended to hinder or defraud the other party . . . ." Black's Law Dictionary 166 (10th ed. 2014). These badges

of fraud include whether the transfer was to an insider, such as a relative of the debtor, whether the debtor had been sued before the transfer was made, whether the transfer was substantially all of the debtor's assets, and whether the consideration received by the debtor was equivalent to the value of the asset transferred. K.S.A. 33-204(b); K.S.A. 33-201(g)(1)(A).

*If Harder had a right to payment for damages, she had a claim under the UFTA.*

The district court reasoned that, because the judgment had been paid in full after Harder filed suit, Harder no longer had a "claim" as defined by the UFTA because she no longer had a right to payment. However, as Harder argues in her brief, the definition of "claim" is far broader than a right to payment from a judgment. A claim includes any right to payment, regardless of whether the payment has been reduced to a judgment, and regardless of whether the right to payment is disputed. K.S.A. 33-201(c). So, the issue is whether Harder has a right to payment.

Harder claims that her right to payment arises under K.S.A. 33-207. This is the section of the UFTA that establishes remedies of creditors. In addition to allowing creditors to set aside fraudulent conveyances, this section also allows "any other relief the circumstances may require." K.S.A. 33-207(a)(3)(C). Harder argues that the circumstances of this case require Foster to pay for the costs she incurred in filing the lawsuit to set aside the fraudulent conveyances. Foster may dispute whether or not Harder is entitled to any remedy for the fraudulent conveyances, but the definition of "claim" in the UFTA includes any right to payment, even if disputed.

In the prayer for relief in Harder's petition to set aside the fraudulent conveyances, she asked the court to set aside the fraudulent transfers, to grant her attorney fees and court costs, and to grant any other relief the circumstances require. While she lists attorney fees and other relief as separate requests, it seems as though her request for other

22

relief was primarily a request for the attorney fees generated in prosecuting the case against Foster and his family members. Thus, we must determine whether Harder had the right to attorney fees as a component of the "other relief" authorized by K.S.A. 33-207(a)(3)(C).

*The UFTA does not explicitly authorize attorney fees.*

The district court held that the costs Harder was requesting did not constitute the type of relief authorized by K.S.A. 33-207(a)(3)(C). This is partially correct.

Kansas adheres to the American rule. This rule proscribes courts from awarding attorney fees unless specifically authorized by statute or contract. *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 279, 241 P.3d 15 (2010); *Hodges v. Johnson*, 288 Kan. 56, 70, 199 P.3d 1251 (2009). The provision of the UFTA upon which Harder relies, K.S.A. 33-207(a)(3)(C), uses general language. It does not specifically authorize attorney fees. See, *e.g.*, *King v. King*, No. 1CA-CV 14-0617, 2016 WL 1332122, at *7 (Ariz. App. 2016) (unpublished opinion) (holding that the phrase "[a]ny other relief the circumstances may require" did not provide a specific statutory basis for attorney fees); *Volk Constr. Co. v. Wilmescherr Drusch Roofing Co.*, 58 S.W.3d 897, 901 (Mo. App. 2001) (holding that the UFTA did not provide "express statutory authorization . . . for the award of attorney's fees"); *Norris v. R&T Manufacturing, LLC*, 266 Or. App. 123, 125, 338 P.3d 717 (2014) ("UFTA does not explicitly provide for an award of attorney fees."). So under the American rule, attorney fees are not allowed under the UFTA.

However, Kansas recognizes an exception to the American rule "'where the plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant.'" *Hawkinson v. Bennett*, 265 Kan. 564, 575, 962 P.2d 445 (1998) (quoting *Duggan v. Rooney*, 749 F. Supp. 234, 241 [D. Kan. 1990]). This is because fees

23

related to third-party litigation (separate from the claim against the tortfeasor or wrongdoer) are viewed as a separate measure of damages collaterally related to the tortious act.

Although the exception is generally a common law principle, the UFTA states that the common law principles "supplement its provisions." K.S.A. 33-210. In addition, such collateral damages seem to be what the legislature had in mind when allowing a creditor not only to set aside a fraudulent conveyance but to "any other relief the circumstances may require." K.S.A. 33-207(a)(3)(C).

Harder argues that this exception applies in her case because she was forced to litigate against Foster's family members due to Foster's tortious conduct. But, relying on *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan. App. 2d 1002, 894 P.2d 260 (1995), the district court held that the third-party litigation exception did not apply to Harder's claim. Accordingly, we must determine whether Harder's situation falls under the exception. But before we look at *Golconda Screw* and *Hawkinson* to determine the application of the exception to the facts of this case, we believe it is necessary to examine the exception itself in more detail.

*Discussion of the third-party litigation exception to the American rule*

The third-party litigation exception to the American rule is not unique to Kansas. Many other states also allow for the recovery of attorney fees from a wrongdoer whose tortious conduct necessitated litigation with third parties. The principle has various names. See *Sooy v. Peter*, 220 Cal. App. 3d 1305, 270 Cal. Rptr. 151 (1990) (referring to the principle as the "tort of another" doctrine); *City of Cottleville v. St. Charles County*, 91 S.W.3d 148, 150 (Mo. App. 2002) (referring to the principle as the collateral litigation exception); *Macris & Assocs., Inc. v. Neways, Inc.*, 60 P.3d 1176 (Utah App. 2002) (referring to principle as third-party litigation exception).

24

Not all courts view the third-party litigation principle as an exception to the American rule. The California Court of Appeals, for example, stated "that the so-called 'third party tort exception' to the rule that parties bear their own attorney fees is not really an 'exception' at all but an application of the usual measure of tort damages." *Sooy*, 220 Cal. App. 3d at 1310; see also 25 C.J.S., Damages § 87 (stating that the doctrine "has been treated as an exception to the American rule . . . however, there is also authority that the doctrine is not an exception to the American rule but rather an item of damages recoverable for another's wrongful conduct"). Despite the various names, the principle underlying each case appears to be the same—when litigation with third parties is the natural, proximate consequence of a defendant's tortious conduct then the defendant is liable to the plaintiff for expenses generated in the third-party litigation.

Several early Kansas cases cite to the principle as it is described in Sutherland on Damages § 58.

> "If one's property is taken, injured or put in jeopardy by another's neglect of duty imposed by contract, or by his wrongful act, any necessary expense incurred for its recovery, repair or protection is an element of the injury. It is often the legal duty of the injured party to incur such expense to prevent or limit the damages; and if it is judicious and made in good faith, it is recoverable, though abortive." 1 Sutherland on Damages § 58 (2d ed. 1893).

See *McOsker v. Federal Insurance Co.*, 115 Kan. 626, 629, 224 P. 53 (1924); *Bank v. Robbins*, 71 Kan. 748, 752, 81 P. 487 (1905); *Bank v. Williams*, 62 Kan. 431, 434, 63 P. 744 (1901).

Sutherland distinguished between damages that are the direct, immediate, and proximate consequence of a wrongful act, which are recoverable, and damages that are not recoverable because they are so remote that they "cannot be considered as having entered into the contemplation of the parties." 1 Sutherland on Damages § 58 (3d ed.

25

1903). Sutherland then applied this principle to attorney fees. His examination of the caselaw revealed that when a "person whose breach of contract, fraud or other wrongful act causes another to be sued, under such circumstances that the suit is an injurious consequence for which he is liable, is bound to respond in damages for the expenses which are the necessary and legal incidents of the suit." 1 Sutherland on Damages § 58 (3d ed. 1903). Attorney fees "do not constitute an element of legal damage when the suit is on the contract" because such damages are too remote. 1 Sutherland on Damages § 58 (3d ed. 1903). Attorney fees incurred in litigating with third parties, however, are recoverable from the wrongdoer as an element of damages if the fees incurred are necessary and requested in good faith. 1 Sutherland on Damages § 58 (3d ed. 1903).

Other treatises also discuss this rule or exception. Hawaii adopted a four-part test from Stuart Speiser's treatise on attorney fees, to determine whether claimants can recover attorney fees under its third-party litigation exception:

"In order to recover attorneys' fees under this principal, the plaintiff must establish: (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant, or because of defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement; (2) that the litigation was with a third party, not with the defendant from whom the fees are sought to be recovered; (3) that the attorneys' fees were incurred in that third-party litigation; and (4) whether the fees and expenses were incurred as a result of defendant's breach of contract or tort, that they are the natural and necessary consequences of the defendant's act, since remote, uncertain, and contingent consequences do not afford a basis for recovery." *Uyemura v. Wick*, 57 Hawaii 102, 109, 551 P.2d 171 (1976) (quoting 1 Speiser, Attorneys' Fees, § 13:4 [1973]).

Likewise, section 914 of the Restatement (Second) of Torts (1979) explains:

"(1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.

26

"(2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

See *Gagnon v. Turgeon*, 271 A.2d 634, 635 n.1 (Me. 1970) (adopting what it calls the "tort of another" doctrine from this provision).

Because it is important later in our discussion, we pause to note, that the way that § 914 is written presumes that the third-party litigation will occur in earlier litigation. However, it does not appear to be a requirement. For example, the Corpus Juris Secundum states:

"[W]here a person through the tort of another has been required to act in protection of his or her interests by bringing or defending an action against a third person, he or she is entitled to recover from the wrongdoer attorney's fees and other expenses incurred in the prior litigation . . . .

. . . .

". . . [R]ecovery of attorney's fees should not be denied simply because the action against the third person is tried in the same court at the same time as the action against the wrongdoer who made the litigation with the third person necessary." 25 C.J.S., Damages § 87 (2012).

See also 45 A.L.R. 2d 1183, 1186 ("[W]here the natural and proximate consequence of a tortious act of defendant has been to involve plaintiff in litigation with a third person, reasonable compensation for attorneys' fees incurred by plaintiff in such action may be recovered as damages against the author of the tortious act.").

Likewise, other courts have examined situations similar to Harder's. In Missouri, as suggested in some of the treatises, the general rule statement says that the attorney fees had to be generated in *prior* litigation. *City of Cottleville v. St. Charles County*, 91

27

S.W.3d 148, 150 (Mo. App. 2002) ("Unlike the other exceptions, the collateral litigation exception does not allow the party to recover its fees expended in the action in which the judgment is being rendered, but rather it allows a party to recover its fees expended in collateral litigation."). However, when Missouri courts were actually faced with a situation with the same procedural posture of Harder's—third parties were sued in the same action as the tortfeasor—the court did not require the requested fees to be generated in earlier litigation. *Collier v. Manring*, 309 S.W.3d 848, 850 (Mo. App. 2010).

California courts have also addressed a situation like Harder's. For example, in *Prentice v. North Amer. Title Guar. Corp., Alameda Division*, 59 Cal. 2d 618, 621, 381 P.2d 645 (1963), the California Supreme Court stated:

> "In the usual case, the attorney's fees will have been incurred in connection with a prior action; but there is no reason why recovery of such fees should be denied simply because the two causes (the one against the third person and the one against the party whose breach of duty made it necessary for the plaintiff to sue the third person) are tried in the same court at the same time."

Later, the California Court of Appeals clarified the *Prentice* rule, stating that "[t]he rule of *Prentice* was not intended to apply to one of several joint tortfeasors in order to justify additional attorney's fee damages." *Vacco Industries, Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 57, 6 Cal. Rptr. 2d 602 (1992). This is because "[i]f that were the rule there is no reason why it could not be applied in every multiple tortfeasor case with the plaintiff simply choosing the one with the deepest pocket as the '*Prentice* target.'" 5 Cal. App. 4th at 57.

Although the *Vacco* case makes the important point that the third party cannot be a joint tortfeasor with the defendant, the third party does not necessarily have to be an uninterested party. In *In re Advanced Telecommunication Network, Inc.*, No. 6:03-bk-00299-KSJ, 2015 WL 1507858, at *3 (Bankr. M.D. Fla. 2015), the defendant argued that

28

the plaintiff could not utilize the tort of another doctrine because the third-party suit was not brought against a "'disinterested' or 'unrelated' party." The court, which was applying New Jersey law, rejected the defendant's argument. 2015 WL 1507858, at *3. The court discussed *Jugan v. Friedman*, 275 N.J. Super. 556, 646 A.2d 1112 (1994), *overruled on other grounds by Banco Popular No. America v. Gandi*, 184 N.J. 161, 876 A.2d 253 (2005). *Jugan* was a fraudulent transfer case in which the tortfeasor transferred assets to his wife and children. The court noted that in *Jugan* "the primary tortfeasor and transferor was responsible for attorney fees incurred by the plaintiff in avoiding and in recovering assets transferred to the family members, who were co-defendants and certainly *not* disinterested parties or 'strangers.'" *In re Advanced Telecommunication Network*, 2015 WL 1507858, at *3.

Additionally, there is no requirement that the third party itself engage in wrongdoing, nor is there a requirement that the third party be innocent. Compare *McOsker*, 115 Kan. 626 (innocent third party) with *Duggan*, 749 F. Supp. 234 (third party breached a contract with plaintiff).

In sum, although Kansas has always referred to the recovery of attorney fees as an *exception* to the American rule, and we continue that practice here, we agree with the California courts when they have said that it is really not an exception at all but simply a measure of collateral tort damages. See *Sooy*, 220 Cal. App. 3d at 1310. In this case, the recovery of attorney fees as it relates to bringing a claim against third parties (not the tortfeasor himself) is simply part of the measure of damages for the tort of fraud.

*Discussion of the third-party litigation exception as applied in UFTA cases*

Like Kansas, many other states adopted the UFTA. Graves, *The Kansas Uniform Fraudulent Transfer Act*, 68 J.K.B.A. 34, 35 (1999). Some of these states' courts have examined exceptions to the American rule in the specific context of UFTA claims. These

29

courts have "adhere[d] to state common law rules when assessing the availability of attorney's fees under the UFTA." *Volk*, 58 S.W.3d at 901; see also *In re Youngstown Osteopathic Hosp. Ass'n*, 280 B.R. 400, 410 (Bankr. N.D. Ohio 2002) (recognizing that attorney fees may be awarded under UFTA due to common law rule permitting attorney fees in cases of fraud involving malicious and intentional conduct); *Volk*, 58 S.W.3d at 901 (holding that the "'special circumstances'" exception to the American rule, which includes situations where a party has engaged in intentional misconduct, permits an award of attorney fees under the UFTA when the debtors completed the fraudulent transfers with actual intent to hinder, delay, and defraud creditors); *Morris v. Askeland Enterprises, Inc.*, 17 P.3d 830 (Colo. App. 2000) (acknowledging that the third-party litigation exception applies, but holding that the plaintiff failed to meet its requirements). This is also consistent with the clear language in UFTA, as adopted in Kansas, that allows creditors to set aside fraudulent conveyances and "any other relief the circumstances may require." K.S.A. 33-207(a)(3)(C).

Ohio courts permit an award of attorney fees under Ohio's version of the UFTA. *Reinbolt v. Kern*, No. WD-12-041, 2013 WL 1390607, at *12 (Ohio App. 2013) (unpublished opinion). This is because Ohio's UFTA, like Kansas', is supplemented by common law and also permits "'any other relief that the circumstances may require.'" 2013 WL 1390607, at *12 (quoting Ohio Rev. Code Annot. 1336.07[A][3][c]). Under Ohio law, "it is well established that '[a] person injured by fraud is entitled to such damages as will fairly compensate him for the wrong suffered; that is, the damages sustained by reason of the fraud or deceit, and which have naturally and proximately resulted therefrom.'" *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App. 3d 651, 671, 729 N.E.2d 768 (1999) (quoting *Foust v. Valleybrook Realty Co.*, 4 Ohio App. 3d 164, 166, 446 N.E.2d 1122 [1981]). In a case where "the amount of the fraudulent transfer does not adequately compensate the injured creditor for its loss, it does not provide the appropriate measure of recovery." *Aristocrat*, 133 Ohio App. 3d at 672.

Again, because it is important later in this discussion, we pause to note that when the third-party litigation exception has been applied specifically in the context of a UFTA claim, courts have not taken issue with the fact that the attorney fees claimed in such cases were not generated in prior litigation. See *Macris & Assocs., Inc. v. Neways, Inc.*, 60 P.3d 1176 (Utah App. 2002) (court erred in failing to consider whether third-party exception applied despite fact that Macris sued the third party and the wrongdoer in same action); *Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*, No. 01CC14684, 2008 WL 5061495, at *5 (Cal. App. 2008) (unpublished opinion) (Palacio allowed to "recover from the McMahons any attorney fees reasonably incurred to recover property fraudulently transferred to third parties who are not joint tortfeasors; *i.e.*, innocent transferees.").

*We examine the district court ruling and apply the third-party exception to the American rule in this case.*

As noted previously, Kansas cases cited to the principle of the third-party litigation exception as it is described in Sutherland on Damages § 58 as early as 1901. *Williams*, 62 Kan. at 434; see also *McOsker*, 115 Kan. at 629; *Robbins*, 71 Kan. at 752. *McOsker* was later cited with approval in *Golconda Screw, Inc. v. West Bottoms Ltd.*, 20 Kan. App. 2d 1002, 1009, 894 P.2d 260 (1995). Subsequently, in *Hawkinson v. Bennett*, 265 Kan. 564, 575, 962 P.2d 445 (1998) (quoting *Duggan*, 749 F. Supp. at 241), our Supreme Court addressed the issue by noting that "'an exception to [the American] rule has been recognized in Kansas where the plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant.'" So the exception has firm footing in Kansas caselaw.

The third-party litigation exception is important in this case because it means that Harder may be permitted to recover attorney fees if she can prove that the exception applies. The district court relied on *Golconda Screw* for the proposition that attorney fees

31

are not authorized in a fraudulent conveyance claim. Harder argues that *Hawkinson*, not *Golconda Screw*, is controlling in this situation and allows the recovery of attorney fees. Thus, we must examine both cases.

*Golconda Screw* was a straight-forward fraudulent transfer case decided before Kansas adopted the UFTA. There Golconda Screw, a judgment creditor, brought an action against West Bottoms, a corporate judgment debtor, seeking to set aside the fraudulent transfer of a warehouse. Important to its application to the case at bar, Golconda Screw did *not* sue the transferees. Because Kansas had not yet adopted the UFTA, Golconda Screw relied on K.S.A. 33-102 (Furse 1993) to support its claim. That statute was located in the Statute of Frauds section of the K.S.A. It provided:

> "Every gift, grant or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment or execution, made or obtained with intent to hinder, delay or defraud creditors of their just and lawful debts or damages, or to defraud or to deceive the person or persons who shall purchase such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect." K.S.A. 33-102 (Furse 1993).

The district court set aside the conveyance and granted Golconda Screw attorney fees and punitive damages. West Bottoms appealed the award of attorney fees and punitive damages. The Court of Appeals affirmed the award of punitive damages but reversed the award of attorney fees. 20 Kan. App. 2d at 1008, 1011. In rejecting the award of attorney fees, the court cited the well-known rule that attorney fees may not be awarded unless authorized by statute or by agreement of the parties. 20 Kan. App. 2d at 1008.

Here, the district court held that this straight-forward holding in *Golconda Screw* prohibits Harder's request for attorney fees generated in litigating her UFTA claim. But with the adoption of the UFTA, the statute now specifically allows a creditor to not only

32

set aside a fraudulent conveyance but for "any other relief the circumstances may require." K.S.A. 33-207(a)(3)(C). Accordingly, Harder argues that the district court should have found *Hawkinson* controlling.

In *Hawkinson*, Communications World International, Inc., (CWI) entered two sales franchise agreements with Robert and Linda Bennett in the early 1980s. In 1986, the Bennetts entered a Master Franchise Agreement with CWI covering the Kansas City area. In 1988, CWI entered a sales franchise agreement with Bruce Hawkinson, also for the Kansas City area. The Hawkinson/CWI agreement required the franchisee (Hawkinson) to "'order equipment through, and remit payments and reports to the Master Franchise" (the Bennetts). 265 Kan. at 569. The Bennetts "wrongfully withheld royalties for several months demanding that CWI terminate Hawkinson's franchise." 265 Kan. at 575-56. In 1992, CWI sent Hawkinson a letter informing him that he was in default of his agreement. CWI's letter also stated that it would not be offering Hawkinson the opportunity to participate in a new franchise program. Hawkinson sued CWI. The parties' agreement required them to go to arbitration, and Hawkinson won an award at the arbitration proceedings. The Johnson County District Court confirmed Hawkinson's arbitration award against CWI in November 1993.

In January 1993, Hawkinson sued the Bennetts for tortious interference and breach of fiduciary duty. A jury found in Hawkinson's favor on all claims. As a component of relief, the district court ordered the Bennetts to pay approximately $33,000 dollars for "Hawkinson's attorney fees, expenses, and lost time incurred in arbitration against CWI" 265 Kan. at 572. On appeal, the Bennetts contested the award of attorney fees, arguing that "attorney fees are not allowable as damages in the absence of a statute authorizing their recovery." 265 Kan. at 572. The *Hawkinson* court agreed that the Bennetts stated the general rule. But, the court noted that "'an exception to this rule has been recognized in Kansas where the plaintiff has been forced to litigate against a third party because of some tortious conduct of the defendant.'" 265 Kan. at 575 (quoting *Duggan*, 749 F. Supp.

33

at 241). The court then provided the same quotation from Sutherland on Damages as the *McOsker* court. The court held that "[t]he arbitration with CWI was a foreseeable, natural, and proximate consequence of [the Bennetts'] conduct. [The Bennetts] were CWI's largest producers and acted in concert with several other large producers, when they wrongfully withheld royalties for several months demanding that CWI terminate Hawkinson's franchise." 265 Kan. at 575-76.

Elements of both *Golconda Screw* and *Hawkinson* are present in this case. But neither case is controlling. Like in *Golconda Screw*, Harder is requesting the fees for prosecuting her fraudulent conveyance action. The *Golconda Screw* court refused to award the fees because they were not generated in a separate action that had been caused by the defendant's fraud. However, *Golconda Screw* is distinguishable because West Bottoms' fraud did not cause Golconda to engage in litigation with third parties.

This case is more like *Hawkinson* in that Harder is alleging that her 2015 lawsuit was a foreseeable, natural, and proximate consequence of Foster's transfer of all of his assets for no consideration. Foster knew that he had been ordered to pay the judgment from Harder's first suit, and Harder alleges that Foster acted in bad faith in transferring his assets. However, there is a major distinguishing factor between *Hawkinson* and the present case: procedural posture. In *Hawkinson*, the attorney fees requested were generated in prior, separate actions. This is also true in other Kansas cases applying the exception. See, *e.g.*, *McOsker*, 115 Kan. 626; *Bourke v. Spaight*, 80 Kan. 387, 102 P. 253 (1909); *Williams*, 62 Kan. 431. But here, Harder generated fees against the third parties (Foster's children and Foster's son-in-law) in the same lawsuit in which she is requesting the fees, not a separate lawsuit. Application of the exception in the same law suit is a matter of first impression in Kansas. We find that this is a distinction without a difference. To be consistent with the reason behind the third-party litigation exception, and other treatises and litigation interpreting it, we can find nothing that convinces us that our Supreme Court would limit the exception to prior litigation when faced with the

34

third-party claim being asserted in the same case as the action against the wrongdoer. Accordingly, Harder is allowed to argue that Foster's "wrongful act" caused her to incur expenses in litigation against third parties, regardless of whether it was in one suit or multiple suits. However, she is only able to recover attorney fees specifically related to the third-party claims.

*Conclusion*

Based on the preceding principles, we are prepared to define the contours of Kansas' third-party litigation exception. In order for the exception to apply, a plaintiff must show that (1) the defendant committed a tort or violated a contractual duty; (2) third-party litigation is the natural and proximate consequence of the defendant's wrongdoing; (3) it was necessary for the claimant to engage in the third-party litigation; and (4) the claimant exercised good faith in the third-party litigation. If, as here, the third party and wrongdoer are tried in the same case, the claimant can only recover attorney fees that were necessary as to the third party. When the third party is a joint tortfeasor with the wrongdoer, or where the third party and defendant are in privity, claimants cannot raise this exception. The third party itself does not need to engage in any independent wrongdoing, although that is sometimes the case. As a result, we reverse the district court's order dismissing the 2015 case and remand for a determination whether the principles outlined above apply and what if any attorney fees are in order on the 2015 case.

To assist the district court on remand, we emphasize that in considering whether Harder has a claim for damages that includes third-party attorney fees the court must determine whether third-party litigation was necessary in this case. It is not unusual for judgement creditors to obtain full satisfaction from many different avenues, even when faced with a fraudulent transfer. If these attempts are met with stonewalling and defiance, the need to file a new action becomes clear. So, the district court should examine whether

Harder made any collection attempts prior to instituting third-party litigation. Did she make demands on Foster or his children? Foster clearly owned property, both real and personal, that he purchased with proceeds from his sale of real property to Harder. At oral argument, Harder conceded that she had a judgment lien on Foster's real property and, according to Foster's counsel, Foster did not claim a homestead exemption on the property. See K.S.A. 60-2202 and K.S.A. 60-2302. Foster also purchased personal property including a car that may have been subject to seizure and execution on the judgment in whole or in part. See K.S.A. 60-2304. This action was filed before the conclusion of the 2013 case, so it is hard to imagine that much had been done in terms of collection, but that will need to be examined by the district court in an effort to determine whether (1) the third-party litigation is the natural and proximate consequence of the defendant's wrongdoing; (2) it was necessary for the claimant to engage in the third-party litigation; and (3) the claimant exercised good faith in the third-party litigation. And finally, did Harder claim that Foster's children were joint tortfeasors or in privity with Foster? Such claims would prevent the application of the third-party litigation exception.

*The district court did not err by denying Harder's motion for leave to amend and to assert a claim for punitive damages.*

Finally, Harder contends that the district court erred when it denied her motion for leave to amend her fraudulent conveyance petition to assert a claim for punitive damages. The district court denied Harder's motion because "[w]ithout actual damages a party cannot recover just punitive damages." Even if we assume this was error for purposes of analysis, in the time between the district court's decision and this appeal, the Court of Appeals has decided a case on punitive damages that supports the district court's decision on different grounds.

The district court issued its decision in September 2016. In November 2016, in a separate case, this court was asked to decide an issue of first impression: "whether

36

plaintiffs' claim for punitive damages survives the death of the wrongdoer." *Alain Ellis Living Trust v. Harvey D. Ellis Living Trust*, 53 Kan. App. 2d 131, 137, 385 P.3d 533 (2016), *petition for rev. filed* December 19, 2016. The court examined decisions from other states and determined that "[a] majority of the states that have considered this issue have held that punitive damages do not survive the death of a wrongdoer." 53 Kan. App. 2d at 137. The reasoning behind this principle is that the "dual purposes of imposing punitive damages are to punish wrongdoers and to deter others from committing similar bad acts." 53 Kan. App. 2d at 138. If the wrongdoer is deceased, then the purposes of punitive damages are not achieved and "it is the deceased's innocent estate that suffers rather than the wrongdoer." 53 Kan. App. 2d at 138. The Court of Appeals concluded that "in the absence of statutory authority in Kansas, a claim for punitive damages does not survive the death of the wrongdoer." 53 Kan. App. 2d at 140-41. We find the *Alain* case persuasive.

Foster died in September 2015 and his estate was substituted as a party. Because a claim for punitive damages does not survive the death of the wrongdoer, the district court did not err in denying Harder's claim for punitive damages and we affirm this part of the district court's ruling.

We reverse and remand both cases for determination of any attorney fees to be assessed against Foster's estate.

Affirmed in part, reversed in part, and remanded.

37